ROCHESTER & L. O. WATER CO. v. CITY OF ROCHESTER.

(Supreme Court, Appellate Division, Fourth Department. May 26, 1903.)

1. WATERWORKS—PIPES—CONSENT OF CITY—CHARTER—STATUTES.
Transportation Corporations Act (Laws 1890, p. 1151, c. 566, § 82, subd. 2), as amended by chapter 617, p. 1171, of the Laws of 1892, confers on water companies power to lay their pipes in any street of an adjoining city to the city, town, or village where permission has been obtained. *Held*, that where a city was between the source of water supply of a water company organized under the statute and a town where the right to lay pipes and furnish water had been obtained, the corporation had a right to lay its pipes in the streets of the city without the consent of the latter, notwithstanding that various acts and ordinances of the common council forbid the use of the streets except under the direction of the common council.

2. SAME—RIGHT OF WAY.
A railroad company had a right to grant the water corporation the right to lay its mains along its right of way through the city.

3. SAME—ARBITRARY SELECTION OF ROUTE.
A water company passing through a city in order to reach an adjoining village may not arbitrarily select its route through such city, since both the interests of the city and the water company are involved.

4. SAME—INJUNCTION—ORDER.
A formal order granting an injunction relates back, in effect, to the day of the date of the decision granting the injunction.

5. WATER COMPANIES—RIGHT TO SUPPLY WATER.
Rochester City Charter (Laws 1880, p. 59, c. 14, § 150), as amended by Laws 1890, p. 1024, c. 561, gives the commissioner of public works control over the waterworks system, and section 155 (Laws 1880, p. 60, c. 14) provides that extensions shall not be otherwise constructed than as determined by the common council. White Charter (Laws 1898, p. 388, c. 182) § 110, requires the superintendent of the waterworks to devise and plan the sources of water supply and the distribution of water. Transportation Corporations Act (Laws 1890, p. 1151, c. 566, § 82, subd. 2), as amended by Laws 1892, p. 1171, c. 617, gives water companies power to lay their pipes in the streets of any city adjoining a city, town, or village where such permit has been obtained. *Held*, that a water company which, under the transportation act, had a right to lay its pipes in the streets of the city of Rochester, had no right to supply water in such city.

Appeal from Special Term, Monroe County.

Suit by the Rochester & Lake Ontario Water Company against the city of Rochester. From a judgment granting a perpetual injunction restraining defendant from interfering with the plaintiff in laying its water mains, defendant appeals. Affirmed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

William A. Sutherland and John Van Voorhis, for appellant.
Albert H. Harris, for respondent.

SPRING, J. The plaintiff is a water company incorporated pursuant to the transportation corporations law (Laws 1890, p. 1136, c. 566) for the purpose of furnishing water to the villages of Brighton and Fairport and three towns. The water is to be taken from Lake Ontario west of the mouth of the Genesee river, and the towns are between the lake and the city, while the latter is between the towns and the villages. The preliminary permit prescribed by section 80 of the law mentioned has been granted by the municipal authorities of these villages. None has been obtained from the city of Rochester. The route has been adopted. The right of way entirely through the city of Rochester, along the lands of the New York Central & Hudson River Railroad Company, has been acquired, and a contract has been entered into with that company to furnish it with water in the villages of Brighton and Fairport, as well as in the city of Rochester, along its right of way. The waterworks company has also assumed and undertaken to execute an agreement with the village of Brighton to supply it with adequate and wholesome water, or, in default thereof, to pay to said village $2,000 as liquidated damages. After these preliminaries had been consummated, the plaintiff, for the purpose of laying its pipes or mains across the streets of the said city, and along the right of way of the said railroad company, commenced the digging of trenches therefor at North Union street and Culver street, in said city. The municipal authorities forcibly interrupted the work, and this action was commenced.

A preliminary injunction was granted, and an appeal from the order was taken to this court. The parties desired a speedy determination of the action, and it has since been tried, resulting in the decision and judgment from which the present appeal has been taken.

The transportation act referred to in defining the additional powers conferred upon waterworks corporations includes within section 82, subd. 2, as amended by chapter 617, p. 1171, of the Laws of 1892, the power "to lay their water pipes in any streets or avenues or public places of an adjoining city, town or village to the city, town or village where such permit has been obtained." Originally this right was limited to an adjoining village or town, but was amended by the act mentioned to extend to a city adjoining a town or village which has granted the requisite permit to a waterworks company. In the present case, as will be observed, the corporation has located its lines through several towns between the city of Rochester and the source of supply, and also intends to supply the inhabitants of those towns with water, and it has also obtained the necessary permit, and entered into

contracts, to furnish water to the inhabitants of the villages of Brighton and Fairport; and the city of Rochester intervenes the towns mentioned and these villages. It may be fairly said, therefore, that it is a necessity to pass through the city of Rochester in order to complete its line, and the right of way has been secured the whole distance in the city to carry out the project contemplated by its incorporation.

In its twelfth finding of fact, the court has found:

"It is necessary for the plaintiff, in order to carry out the purposes of its incorporation, and to fulfill the contracts which it has made and assumed, to lay its water mains along the route which it has adopted, and on the continuous strip of land through the city of Rochester in which it has an easement as aforesaid, and to cross the intersecting streets in said city."

In Village of Pelham Manor v. New Rochelle Water Company, 143 N. Y. 532, 38 N. E. 711, New Rochelle and Pelham Manor were adjoining villages. The water company had entered into a contract with the authorities of the village of New Rochelle to supply its inhabitants with wholesome water. Pelham Manor did not intervene the source of supply and New Rochelle, but, in order to carry out the plan of the water company, it was necessary, in the sense that it was desirable and judicious, to run its mains through the latter village. The judge at special term had found the use of the streets of Pelham Manor was necessary to carry out the plans devised, and the judgment was sustained by the Court of Appeals. The court, after commenting upon the section of the statute quoted above, says at page 536, 143 N. Y., and page 712, 38 N. E.:

"But the Legislature evidently anticipated that a water company, in performing its functions of supplying the town, and every part of which granted the permit, with water, might, for some reason, find it necessary to cross the boundary line of an adjoining town and use its highways, not for the purpose of supplying that town, but for the purpose of properly and effectively executing the purpose of its creation. Such necessity has been found in this case, as matter of fact, by the trial court, and hence the permission of the municipal authorities who had charge and control of the highway was not necessary."

It is contended by the counsel for the appellant that, by the charter of the city, the distribution of water, the laying of mains in the streets, etc., are within the control of the common council. Section 150 of the charter (Laws 1880, p. 59, c. 14), as amended by chapter 561, p. 1024, Laws 1890; sections 155 and 157 of charter (Laws 1880, p. 60, c. 14); section 110 of White charter (Laws 1898, p. 388, c. 182). These provisions, however, are applicable only to the supplying of wholesome water to the people of Rochester—a subject which I shall discuss later. They have no reference to the statutory provision authorizing the use of the streets of the city to enable a water company to meet its engagement to afford water to an adjacent village. The streets of the defendant are undoubtedly within the regulation and control of the municipal authorities. So the trustees of Pelham Manor possessed the like authority over the streets of that village, and that subject was commented on by the Court of Appeals in the case referred to. The Legislature, in whom the power primarily rests, has granted to a waterworks company, for the distinct purpose mentioned, the privilege of making use of the streets of a city or village; but the privilege is to be exercised

within the fair control and superintendence of the commissioner of public works, or the officer to whom the duty of immediate oversight is entrusted. The principle is the same as obtains where a telephone company, which derives its franchise to use the streets directly from the Legislature (Barhite v. Home Tel. Co., 50 App. Div. 25, 63 N. Y. Supp. 659), endeavors to place its poles or run its wires in a conduit in a street. The manner of so doing, and the location of the poles, are subject to regulation and supervision by the local authorities. The various acts and supplementary ordinances of the common council preventing the use of the public streets and sidewalks except under the direction of the common council (for instance, section 40, subd. 7, of the charter, amended by chapter 28, p. 78, Laws 1894) relate to the right of regulation and control. They do not inhibit the Legislature from granting a right to the use of the streets of a city for a specific purpose, severed from any benefit or detriment to its own people, although executed under the superintendence of the municipal authorities.

It is also urged that the railroad company has no authority to grant to the waterworks company the use of its right of way for placing its mains. So far as the lands owned by the railroad company outside of the streets is affected by this grant, the title in fee is in the railroad company; and I assume the common council may not dictate or control its use, unless necessary for the preservation of the public health, or to prevent a nuisance, or for some like reason. In so far as the grant extended to the putting in of mains in the streets, that is a matter between the railroad company and the waterworks company. An abutting owner may be entitled to damages for the placing of poles along the highway, but this is a benefit wholly disconnected from the rights of the public in the street, or the resulting superintendence over it by the town or municipal authorities. The effect of the grant to use its land in crossing the streets amounts to a waiver of damages by the railroad company. The right to pass over the streets, as affecting the city, is by virtue of the act of the Legislature from which I have quoted. They are independent rights; the one flowing from the ownership of the property, the other from the municipal supervision of the streets. If, under the right granted by section 82, referred to, the water company, instead of going in a roundabout course along certain streets, was able to purchase a right of way across a lot, and thus cut short the distance, the city authorities might not prevent the water company from so doing. If it were only necessary to cross a corner of the city, and no street was along the course, and the company were able to secure from the owners the right of passage across the land within the city, it would be no concern of the latter. The municipal authorities are interested in two propositions only—one, the use of the streets by the company without its permission; the other, the distribution of water to its citizens or industries. The railroad company does not become a purveyor of water. It simply grants permission to a lawful company to place its pipes along land which it owns. If the city had given its permission to the plaintiff to pass under its streets, no one would question the right of the railroad company to let the plaintiff cross its right of way or run along it. If the right to the use

of the streets were eliminated from this controversy, and the plaintiff had acquired an easement of the railroad company over its land outside of the streets, that easement would not be an excessive use of its authority. We concede a railroad company is incorporated for a specific purpose. But on the one hand, by reason of this restriction, it is not enabled to block the growth of a municipality, and prevent the location of manufacturing plants, the building of other railroads, or of the mains used in distributing gas or water throughout the city. On the other hand, it is not to be hindered in granting an easement not in conflict with its charter. The question as to the power of a railroad company is a subsidiary and incidental one. The real question is, can the plaintiff, a water company, use the streets of the city of Rochester to enable it to reach adjacent villages with its water system? That right, if it exist at all, is wholly independent of any easement granted by a corporation or an individual, and it depends upon the construction of statutes to which reference has been made. A situation may be conceived where the tearing up of the streets to convey water to a contiguous village may be attended with a displacement of pipes or conduits already lawfully located, or other serious injury, and on that account the right granted by the statute might be refused. That condition is not before us. In any event, ample protection against any such disturbance is secured to the city by the terms of the judgment appealed from, and there is no complaint that they do not amply conserve the rights of the city, if the right to use the streets for the purpose mentioned exist at all. We do not intend to decide that a water company, passing through a city to reach an adjoining village, may arbitrarily select its route through such city. The interests of the city and of the water company are both involved in the selection of the route. If another course than the one adopted through the city is more feasible, or attended with less disturbance to the streets, the municipal authorities may not be bound by the one chosen by the company. In this case no other route was suggested, no complaint was made as to the one selected, but the city denied altogether the right of the respondent to use its streets without the consent of the municipal authorities. By chapter 59, Laws of 1903, section 157 of the charter of the city of Rochester was amended by giving the commissioner of public works authority to lay pipes in the streets for the conveyance of water, and then continues:

"No other person or corporation shall enter upon or excavate any road, street, highway or public place in the city of Rochester, for the purpose of laying down pipes for the conveyance of water, without the permission of the common council."

This act was evidently designed to shut off the plaintiff from executing the project intended by its incorporation. It was not an amendment to the transportation corporations act, and it is an open question whether its effect is to nullify the provision of that act permitting the use of the streets by the plaintiff. Again, the act was signed by the Governor and became a law March 19, 1903. This action was then pending. The decision granting the injunction order restraining the interference by the defendant was made March 18th. The formal order, however, was not entered until March 20th, but by its terms

related back to the date of the decision, and that was its legal effect anyway. Robinson v. Govers et al., 138 N. Y. 425, 34 N. E. 209; Rumsey's Practice, vol. 1 (2d Ed.) p. 278. It is therefore very doubtful whether the effect of this decision could be destroyed by an act of the Legislature which did not become operative until after the rendition of the decision.

Chapter 59 of the Laws of 1903 was further amended, and the power of the municipality extended by an act of the legislature which became operative on May 12th, and after the judgment now before us had been entered and an appeal taken therefrom to this court. The objections suggested to chapter 59 apply with greater force to the amendment.

Passing these preliminary questions, let us consider the effect of these acts on the merits. The plaintiff was incorporated for a specific purpose. It paid the state for the privilege of constructing and maintaining its water system between two given points. When chapter 59, mentioned, went into operation, the plaintiff, by virtue of its franchise, had located the right of way, entered into agreements for supplying the water to villages, and in one instance had obligated itself to pay $2,000 in the event of failure to perform. It had secured the right of way from the railroad company, and had actually commenced excavating the streets. The court has found:

"The plaintiff has acted upon the faith of the franchise, has acquired property and assumed obligations in reliance thereon, and its rights thereunder have become vested."

The franchise, especially when coupled with the expenditure of money and the obligation to pay money made on the faith of this grant, was more than a mere license. It was a contract with the state, and the franchise was property. People ex rel. Woodhaven Gaslight Co. v. Deehan, 153 N. Y. 528, 47 N. E. 787; People v. O'Brien, 111 N. Y. 1 et seq., 18 N. E. 692, 2 L. R. A. 255, 7 Am. St. Rep. 684; Skaneateles Water Co. v. Village of Skaneateles et al., 161 N. Y. 154, 55 N. E. 562, 46 L. R. A. 687; Ghee v. Northern Gas Co., 158 N. Y. 510, 53 N. E. 692.

In the Deehan Case, supra, the court, at page 532, 153 N. Y., and page 788, 47 N. E., said that two propositions have been conceded by the Appellate Division in its review of the case, one of which is:

"That the consent of the town authorities conferred upon the relator a franchise to carry on its business in the town and to lay conductors in the streets and highways for the purpose of delivering gas. That such a franchise is property that cannot be destroyed, or taken from it, or rendered useless by the arbitrary act of the village authorities in refusing the permit to place the conductors under the streets."

If this is property by virtue of the act of the Legislature and the sovereign power which created it, the Legislature has no right to destroy it after money has been expended, and binding engagements made and in process of fulfillment on the strength of it. The principle that a grant of this kind by a sovereign power is a contract, and inviolable, was early decided by the United States Supreme Court in the Dartmouth College Case, 4 Wheat. 518, 4 L. Ed. 629, and has since been often reiterated by that court. New Orleans Gaslight Co.

v. Louisiana Light Co., 115 U. S. 650, 6 Sup. Ct. 252, 29 L. Ed. 516; Pearsall v. Great Northern Ry., 161 U. S. 646, 16 Sup. Ct. 705, 40 L. Ed. 838. In the latter case, after a discussion of the Dartmouth College Case, the court added, at page 661, 161 U. S., page 708, 16 Sup. Ct., 40 L. Ed. 838:

"Subsequent cases have settled the law that, wherever property rights have been acquired by virtue of a corporate charter, such rights, so far as they are necessary to the full and complete enjoyment of the main object of the grant, are contracts, and beyond the reach of destructive legislation."

There are many cases, some of which are cited upon the briefs of the appellant's counsel, holding that the manner of carrying out a privilege granted to a corporation is within the regulation of the Legislature, and that the charter is acquired with the knowledge of the existence in the lawmaking body of the right to exercise dominion over the corporation in this regard. Those authorities, as I view them, all relate to the question of regulation and control, and they do not go to the extent of upholding legislation which will destroy the franchise or impair existing contracts.

It is obvious, however, that the incidental privilege of supplying water to the Central Railroad Company and contiguous property owners within the city of Rochester was one of the chief inducements to the organization of the plaintiff, although that intention was not embodied in its certificate of incorporation filed with the Secretary of State, and upon which its organization tax was accepted by the state. Before the commencement of the action, the plaintiff had entered into a written agreement with the New York Central & Hudson River Railroad Company to supply it with water in large quantities within the city of Rochester, and a like agreement was entered into with the Buffalo, Rochester & Pittsburg Railroad Company. The Central Company is now taking water from the city plant. The counsel for the respondent further contends that it expects to furnish water to other plants and industries along its right of way in the city. It will be readily apprehended that there is nothing in the act authorizing the plaintiff to pass through the city of Rochester to enable it to reach the villages of Brighton and Fairport implying a right to distribute water from its system to the inhabitants of Rochester. The section of the statute which gives that privilege is for the benefit of the people of the villages. It is found in the transportation corporations act, and in no sense relates to the distribution of water within the city of Rochester. Accordingly, the privilege of using the streets of the city of Rochester to convey water to these villages does not carry with it by implication the more important advantage of supplying water to the people of the city or to some portion of them.

The city of Rochester owns its own water system, and it was installed at an expense of $11,000,000. By section 150 of the charter (Laws 1880, p. 59, c. 14), as amended by chapter 561, p. 1024, of the Laws of 1890, the executive board (now the commissioner of public works) is given control over the system and of its extensions, "and of furnishing the water to the citizens, and the care and repair of said works." Again, by section 155, it is provided that extensions "shall not be otherwise constructed than as determined by the common

council." Laws 1880, p. 60, c. 14. By section 110 of the White
Charter (chapter 182, p. 388, Laws 1898) the superintendent of water-
works is required "to see that the city has an abundant supply of whole-
some water for public and private use; to devise the plans and sources
of water supply; to plan and supervise the distribution of water
through the city; to protect it against contamination; to prescribe
rules and regulations for its use, which, when ratified and approved by
the common council, shall have the same force and effect as an ordi-
nance by the common council enacted." It is plain, therefore, that the
municipality is given the control of furnishing the water to its citizens.
It may do this by its own system. It may delegate the right to a
company to supply it. It would, therefore, be an anomalous doctrine
that a corporation without the permission of the city may put in its
own water system, and furnish water to the citizens. If the present
plaintiff is seeking to accomplish this purpose through the pretense
of supplying water to the few inhabitants of a bordering village, it cer-
tainly has no better standing than if it endeavored to gain its end
with the avowed design of supplying water to the people of the city.
The claim of the plaintiff is that it has the right to furnish water to
the railroad company and the manufacturing plants accessible
wherever it may be done without crossing a street of the city. This
may include a very large portion of the city. If it has the right to
supply water to contiguous industries, it may also supply it to all the
inhabitants who are within reach without crossing a street. The
Central Railroad Company crosses 29 streets within the city, and, if
the right is to be extended to its legitimate end, then the city water
system may be shorn of much of its value and efficiency. The plain-
tiff could make similar contracts with the other railroad companies to
supply villages or towns in close proximity, and thus be in a situation
to furnish the whole city with water.

The railroad company was organized for railroad purposes. Its
franchise and right to cross the streets is to enable it to operate its
railroad. It had no franchise and no right to give to the plaintiff to
put in a water system. Whatever right the plaintiff acquired came
from the Legislature. The contract with the railroad company added
nothing to the rights of the plaintiff, so far as the city was concerned.
The fact that the plaintiff expected to extend its system through the
city with the object of reaching the citizens of Brighton gives it no
better standing, so far as the right to supply the city with water is
affected, than if it were in the city unlawfully, or as an interloper.
It does not get into the city for the benefit of the citizens of Rochester.
The furnishing of its citizens with pure and wholesome water is an
incident of a municipality. The preservation of health is one of its
chief functions. For the accomplishment of this object wells may be
destroyed, and private water lines required to be abandoned. The
control of the water supply of a city is more than a mere regulation.
As stated, it may furnish the supply itself. It may permit a company
to supply it. It may exclude a corporation from the privilege. The
whole matter is within the dominion of the proper authorities. The
right to the distribution of water throughout the city by a company is

a valuable one.   The municipality is entitled to reap the benefit of this franchise.

Section 81 of the transportation corporations law, as amended, requires any water company to supply water to the inhabitants of any city through which its mains pass.   This does not mean that the city authorities are bound against their will to accept the water to the destruction of the plant which the city may own and operate.   The obvious interpretation is that the city may require the water company, as a condition of its use of the streets, to supply water to the city at reasonable rates, and that contracts may be entered into for that purpose.

Again, it is to be noted that section 80 of the said law requires any water company expecting to supply the inhabitants of a city, town, or village with water to obtain the permit of the authorities of the municipality whose people are to be thus supplied.   The permission to use the streets of a city for the purpose of laying pipes to reach an adjoining town or village does not impair the force of this requirement. The one is applicable where the citizens of the city are to be benefited, and the other where the benefit accrues to the inhabitants of the coterminous village or city.   They are not in conflict.   The necessary permit to enter the city of Rochester to furnish water to the people of that city, or any portion of them, has not been obtained by the plaintiff.   This is an indispensable prerequisite.

Barring the preliminary objections already suggested, the acts referred to passed during the present year would be effective to prevent the plaintiff from distributing water to the people of the city.   The franchise granted to the plaintiff did not include the right to distribute water to the inhabitants of Rochester, and so there is no impairment of any contract within the compass of the franchise granted to the plaintiff.   Independently of these acts, however, we are clear the water company possessed no authority to supply the inhabitants of the city with water.

It follows that the judgment appealed from should be affirmed, with costs.

ADAMS, P. J., and McLENNAN and HISCOCK, JJ., concur.

WILLIAMS, J., concurs in the affirmance of the judgment, but declines to consider or pass upon the questions as to the furnishing of water to the railroad company within the City of Rochester.   That question is not necessary to a determination of this appeal, and the railroad company is not before the court.   The prevailing opinion, after passing upon the question favorably to the appellant, still concludes that the judgment should be affirmed.   In effect, the conclusion is that, even if the water may not be furnished to the railroad company, still the judgment is correct, and should be affirmed.   Then why consider the question at all?   As it does not affect the result, the court should not, in advance, take its position as to a question that may come before the court in the future when the railroad company, being a party, may be heard before decision upon the question is rendered.