tion, and do not intend to pass upon it, because it does not seem to me to be properly or legitimately before me in this action. This is an action of waste, in which the plaintiffs are seeking to restrain work under a contract upon the grounds that it was executed without proper authority, and that it was tainted by fraud and bad faith upon the part of the commissioner. The action presupposes and assumes that a contract in form has been made for the doing of the work, but that it is subject to defects which entitle plaintiffs to restrain action under it. The second ground just stated proceeds upon the theory that no valid or sufficient contract was ever made in form. If plaintiffs are wrong in this contention, and the purported contract executed between the defendants was sufficiently definite and complete to constitute a contract, and be binding, then plaintiffs are entitled to no relief upon this ground. If, upon the other hand, they are right that no contract valid upon its face was ever made between the parties; that the purported contract was too indefinite and insufficient to be binding or valid, and that, therefore, in effect, there is no contract for the construction of this bridge,— this action is, in my judgment, not the proper method of relief. If the defendant bridge company is attempting or shall attempt to construct a bridge in the town of Crogan without any valid contract for the construction thereof, other questions will be presented, and other methods of relief may be opened to the taxpayers of that town than those which can be considered here. These views lead to a dismissal of plaintiffs' complaint, with costs.

Complaint dismissed, with costs.

---

BARHITE v. HOME TEL. CO. OF ROCHESTER et al.

(Supreme Court, Appellate Division, Fourth Department. March 27, 1900.)

1. MUNICIPALITIES—COMMON COUNCIL—LEGISLATIVE POWERS.

The common council of a city, while acting within its sphere as a legislative body, is supreme, and cannot be fettered or obstructed by judicial interference.

2. SAME—AWARDING CONTRACT—FRAUD—IMPUTATION—SUFFICIENCY.

In an action brought under Code Civ. Proc. § 1925, authorizing actions to prevent the waste of funds of a city, the complaint alleged that the common council of a city entered into a contract granting an incorporated telephone company a franchise to use its system, after certain unincorporated parties had offered to pay the city $15,000 for such a franchise, or to bid for the same. Held, that the allegations were insufficient to support an imputation of fraud in the common council, since it was not bound to accept the offer to pay for the franchise where its judgment favored making the contract with the incorporated company.

3. SAME—FRAUD—ALLEGATION—SUFFICIENCY.

The bare allegation that the action of the common council of a city in awarding a contract was fraudulent, or that the contract was illegal, does not state an issuable fact.

4. SAME—ACTION OF COMMON COUNCIL—JUDICIAL INVESTIGATION.

A bare statement in a complaint to set aside a contract made by the common council of a city with a telephone company, that the contract was made "for the purpose of favoring" the company, without any co-incident fact to justify it, is insufficient to warrant a judicial investigation into the reasons actuating the council in making the contract.

5. SAME—CONTRACTS—VALIDITY.

That the mayor of a city attended and voted at a meeting of a committee of which he was not a member, having special charge of a proposed contract, did not invalidate the contract, where the power of completing the contract was vested in the common council, and was exercised by it alone.

6. SAME—FRANCHISE TO USE STREETS.

Since the exclusive dominion over the streets of a municipality resides primarily in the state, and the transportation corporations law (Laws 1890, c. 566, § 102) grants to telephone and telegraph companies the right to use public streets and highways for the construction and maintenance of their lines, a city has no franchise in its streets which it can sell to a telephone company desiring to use the city's streets for the maintenance of its lines.

7. CITY CHARTER—CONSTRUCTION—USE OF STREETS.

Rochester city charter, as amended by Laws 1894, c. 28, § 8, gives the common council authority to regulate and control the erection of wires and poles in the streets and other public places within the city. *Held*, that such provision is not an infringement of the power of the state legislature in the first instance to grant a franchise to use the streets for the erection of poles and wires, but is merely a grant of the power to regulate the manner in which such franchise shall be exercised.

Appeal from special term, Monroe county.

Action by John A. Barhite against the Home Telephone Company of Rochester, N. Y., and others. From an interlocutory judgment sustaining demurrers to the complaint, plaintiff appeals. Affirmed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

John A. Barhite, in pro. per.

George F. Yeoman, for respondent Home Tel. Co.

Porter M. French, Corp. Counsel, for other respondents.

SPRING, J. The plaintiff is a taxpayer of the city of Rochester, and commenced this action April 21, 1899, pursuant to chapter 301 of the Laws of 1892 and section 1925 of the Code of Civil Procedure, to obtain a judicial determination that the contract set forth in the complaint, and a resolution of the common council authorizing the same, were illegal, and to enjoin the defendants carrying out the same. The complaint, which is very voluminous, sets forth that the common council of the city of Rochester, on the 11th day of April, 1899, adopted a resolution granting to the defendant telephone company a franchise for its system in said city, and empowering and directing the mayor to execute a contract which had been prepared therefor, and a copy of which is contained in the complaint; that, in compliance with such authority and direction, said contract was duly executed and delivered by said mayor and said telephone company, and that said telephone company has already begun to carry out the same; that while said subject was pending before said common council one Fred Gleason presented to said body his petition, in which he purported to represent others, mainly citizens of Rochester, who were associated together in the enterprise outlined therein, and offered for said franchise which it was then intended to grant to the said Home Telephone Company the

sum of $15,000, and to accept and perform the said contract. Said petition further contained an offer to bid for said franchise in the event that said common council determined that more than said sum could be obtained for such franchise, and further agreeing to support its offer by "bond, check, or deposit of money" for the faithful performance of any agreement entered into by said petitioner and his associates. The complaint avers that Gleason personally and by attorney supplemented his petition by appearance before the committee having the special charge of the consideration of the granting of the said franchise, and solicited the granting of the same to him and his associates, and that said franchise should be sold to the highest bidder therefor. The complaint further charges that said common council and the said special committee "wrongfully, unlawfully, fraudulently, and collusively, and in violation of their duties as officials of the city of Rochester, * * * ignored said petitioner, * * * and refused to grant a franchise to said Gleason, and refused to grant said franchise to the person, persons, or corporation who would pay the largest sum therefor to said city, and wasted the property and funds of said city for the purpose of favoring the defendant the Home Telephone Company of Rochester, N. Y."; that, while said lamp committee had said matter under consideration, it "wrongfully and unlawfully" permitted the mayor of said city and others to be present at its sessions, and to urge the execution of said contract with said defendant telephone company, and allowed said mayor to vote as a member of said committee upon the question of granting said franchise, although not a member of said committee; that the construction and operation of said telephone system will be attended with danger to the citizens and their property, for reasons set forth in said complaint. It is further alleged that the recommendation of said lamp committee was "illegally, fraudulently, and collusively adopted by said common council, and without a knowledge of the contents of said contract on the part of many of the members of said common council who voted in favor thereof, and that said resolution and said contract were and are illegal, fraudulent, and void, and that the construction, maintenance, and operation of a telephone system under and in pursuance of said contract would waste and injure the property and funds of the city of Rochester"; that said resolution was adopted hurriedly, and without the two-weeks notice of such motion provided for in the rules of said common council, unless the same is by the unanimous consent of said board, which was not given on the passage of this resolution; that the resolution and contract were illegal and void, and contrary to law, and against public policy.

This, in condensed form, is the complaint, and it is apparent it is meager of facts on which to hinge the charge of fraud. The common council of the city is its legislative body, and within its sphere of action its legislative cognizance is supreme, and cannot be fettered or obstructed by judicial interference. Kittinger v. Traction Co., 160 N. Y. 377, 54 N. E. 1081; People v. Fallon, 152 N. Y. 1–11, 46 N. E. 302. Judge Cooley, in his work on Constitu-

tional Limitations (6th Ed.), in discussing the independence of a' legislative body from interference by the courts, says, at page 229:

"Restraints on the legislative power of control must be found in the constitution of the state, or they must rest alone in the legislative discretion. If the legislative action in these cases operates injuriously to the municipalities or to individuals, the remedy is not with the courts. The courts have no power to interfere, and the people must be looked to, to right through the ballot box all these wrongs."

The charter of the city is the offspring of the legislature. It vests the municipal body with legislative authority, because that delegation is deemed wise and practical on the assumption that the citizens of the municipality and its officers can better legislate for its inhabitants than the state legislature. It is in furtherance of home rule, and is a normal product of the principle of self-government. The transmission of this power vests in the local legislative body, within its restricted range, the same plenary force as if retained and executed by the legislature itself; but it must be borne in mind that the power vests only by explicit warrant. As was said in People v. McIntyre, 154 N. Y. 628, 49 N. E. 70, in construing a cognate delegation of authority:

"Within the limits of this delegated power the board of supervisors is clothed with the sovereignty of the state, and is authorized to legislate as to all details precisely as the legislature might have done in the premises."

People v. Board of Sup'rs, 153 N. Y. 370, 47 N. E. 790; City of Buffalo v. New York, L. E. & W. R. Co., 152 N. Y. 276, 46 N. E. 496.

There is a class of cases where the authority exercised by the common council, though delegated by the legislature, is purely administrative in its character, where a different rule prevails. See Weston v. City of Syracuse, 158 N. Y. 274, 53 N. E. 12. If courts, even in a case of palpable fraud, possess the power to interfere and restrict a body executing its legislative authority within its prescribed compass, that power will be exercised only in an extraordinary case, and when public policy imperatively requires it. If the courts, on every general charge of fraudulent, collusive conduct against the members of a municipal body with delegated legislative power, should intervene to restrain the execution of its normal duties thus delegated, the clashing between the two co-ordinate branches would be fraught with immeasurable harm. The policy of our constitution is to keep these two branches distinct, each to be supreme in its own domain; and transgression upon the province of the one would invite a like trespass upon the other, until the barriers separating the two would be wholly removed. In the present case the only fact upon which the charge of fraud hinges is that the common council declined to accept the proposition of Mr. Gleason, involving, as it is claimed, loss to the city of $15,000. The petition presented did not apprise that body what the occupation, residence, or responsibility of the petitioner was. It was significantly silent as to the names of his associates, and their ability to undertake and perform this contract, of so great importance to the city of Rochester. The defendant telephone company was a body corporate, and that it possessed the financial strength to execute

successfully the obligation to be imposed by the contract was probably known to the members of the common council. That body was intrusted with an important duty, and in its performance had a wide discretion. The simple fact that one man, or set of men, of doubtful or unknown financial credit, offered to bid more than a competing company for a contract that was to be of permanent benefit or detriment to the citizens of the city, did not require the common council to accept that offer if its judgment favored another company. The larger sum bid in this case was not the all-controlling, determining factor. Other circumstances entered into the question, and the body intrusted with the granting of this franchise in the fulfillment of its obligations to its constituency was bound to weigh all the various considerations, and then to decide what was for the best interests of the city; and, when that decision was reached, and made effectual by the agreement, its action could not be disturbed. There is nothing in the city charter making a sale at public auction obligatory upon the common council. The manner of the sale is wholly in the discretion of that body, whenever it possesses the right to sell. To be sure, the complaint imputes fraud and collusion to this body, but an analysis of the facts upon which the sweeping condemnation is based fails to support it. As was said by Chief Judge Parker in Kittinger v. Traction Co., 160 N. Y., at page 387, and 54 N. E., at page 1084, in regard to a similar averment: ,

"Impressive as this allegation is when first read, it will be found on analysis not to allege a single fact which would legally support a conclusion that any member of the common council was bribed, or that he voted in favor of the consent through promise of gain to himself or others."

The bare allegation that the conduct of the board was fraudulent, or that the contract was illegal, does not state an issuable fact. Tallcott v. City of Buffalo, 125 N. Y. 280, 26 N. E. 263. It is a conclusion entirely proper to be stated in summing up an array of facts which support the general charge, but, independent of any fact to uphold it, it is of no weight.

It is contended that the allegation that the request of Mr. Gleason was ignored "for the purpose of favoring the defendant the Home Telephone Company of Rochester, N. Y.," is an averment of a distinct fact upon which the charge of fraud or collusion can be hinged. It is a bald statement without any coincident fact to justify it, and the "favor" may have been from the worthiest of motives. It is inadequate, in any event, to warrant a judicial investigation into the reasons actuating a municipal body in granting a franchise on the charge that it was inspired by corrupt motives,—a field the courts are chary in entering. The averment that the mayor attended the meeting of the lamp committee, and voted thereat, is of no consequence, as the power was vested with and exercised by the common council. Even if the interference of the mayor were unauthorized, there is no suggestion that he continued to exert his influence over the council itself, and no fact is alleged in the complaint from which we can spell out any improper, corrupt intermeddling with the granting of this franchise to the defendant tele-

phone company. But, beyond this, we are decidedly of the opinion
that the city of Rochester had no franchise to sell. As has been
suggested, the tendency of modern legislation is to transmit to the
local authorities the exclusive dominion over the streets of the re-
spective municipalities, but the transmission of that authority must
be evidenced by specific warrant, for the power is in the state pri-
marily. Skaneateles Waterworks Co. v. Village of Skaneateles, 161
N. Y. 154, 165, 55 N. E. 562; Ghee v. Gas Co., 158 N. Y. 510, 53 N.
E. 692; Adamson v. Railroad Co., 89 Hun, 261, 34 N. Y. Supp. 1073.
In every instance, so far as I have been able to discover, where the
consent of a municipal body has been held to be a necessary pre-
liminary to the occupation of its streets by a corporation, that con-
sent has been based upon the delegation of power by the legislature.
In the transportation corporations law (chapter 566, Laws 1890),
pipe-line corporations (sections 45, 46), gas and electric light cor-
porations (section 61, subd. 1), waterworks corporations (section 80),
and others enumerated in this act, are required to procure the con-
sent or permit of the street-governing body before any right to the
use of the street exists in the corporation. By the same act (sec-
tion 102) the right of telegraph and telephone corporations to use
the public streets and highways for the construction and mainte-
nance of their lines is given in unmistakable language, and the con-
sent of the local body is not required. This franchise, therefore,
comes directly from the legislature to the corporation. By amend-
ment to the charter of the city of Rochester enacted in 1894 (chap-
ter 28, § 8), authority is given to the common council "to regulate
and control the erection, construction, laying, stringing, maintain-
ing and removing of all wires, cables, poles, conduits and subways
upon, over and under the streets, avenues, lanes, squares, parks,
bridges, aqueducts and public places within said city." This pro-
vision does not relate to the right to the use of the streets. It is
no infringement upon the power vested in the state legislature to
grant the franchise to telephone corporations. When a corpora-
tion of this kind is to avail itself of the legislative grant, the man-
ner of its exercise, the location of its poles, the stringing of its
wires, etc., are within the control and regulation of the local leg-
islative body. That is one of the police functions committed to the
municipality. This right of regulation is, however, entirely dis-
tinct from the original granting of the privilege. It is subordinate
to that right. The local body has no authority to intervene until
the corporation is seeking to exercise the privilege accorded it by
the state, and then not to enjoin such exercise if within the letter
of its authority, or to exact compensation for the franchise, but to
protect the citizens and the public. It may intercede to reduce to
a minimum this interference with the public user, to require that
the privilege shall be exercised most beneficially to all people in-
terested, or for any other purpose involving "control and regula-
tion" by the local authorities. But this intervention recognizes the
franchise as existing in the corporation.

The interlocutory judgment sustaining demurrers affirmed, with
costs of this appeal to each respondent, and with leave to amend.
All concur; LAUGHLIN, J., in result.