## VILLAGE OF BOLIVAR v. BOLIVAR WATER CO.

(Supreme Court, Appellate Division, Fourth Department. June 4, 1901.)

1. MUNICIPAL CORPORATIONS—WATER SUPPLY—CONTRACT—CONSTRUCTION.

Defendant contracted to put in a water system for the plaintiff, an incorporated village, to furnish a certain number of hydrants, and to connect those already in use with new mains, to be laid by defendant, and to furnish water for fire protection for five years, the mains to be laid below frost. The old mains were 3½ feet deep. Defendant laid the new ones 5 feet in depth, and, on defendant's refusal to connect the old hydrants, plaintiff brought an action to forfeit defendant's franchise. *Held*, that an offer by defendant to connect the old hydrants, if the plaintiff would detach them and deliver them to defendant, constituted no defense to the action, since it was defendant's duty to make the detachment.

2. SAME—VILLAGE TRUSTEES—WATER BOARD—ORGANIZATION—NECESSITY.

Laws 1890, c. 566, provides that the board of trustees of any incorporated village may contract in the name of the corporation for the delivery to the village of water, through hydrants or otherwise, for the extinguishment of fires, and for sanitary and other public purposes; and Laws 1875, c. 181, authorizes the board of trustees of an incorporated village to organize itself into a board of water commissioners, for the purpose of establishing a water system. *Held*, that the board of trustees of an incorporated village had authority, without organizing itself into a board of water commissioners, to pass resolutions granting the defendant the right to use streets and lay the water mains, and to construct a water system, by using in part an inadequate plant, already in use, and owned by the village.

3. SAME—VILLAGE TRUSTEES—WATER COMPANY—FRANCHISE—FORFEITURE—ACTION—PLEADING.

Where an incorporated village, by resolution of its board of trustees, authorized defendant to construct a water system for the village, and subsequently brought an action to forfeit defendant's franchise, defendant cannot attack the validity of the resolutions on appeal on the ground that the village had no authority to pass them, where such defense was not set up in the answer.

4. SAME—ESTOPPEL.

An incorporated village, by resolution of its board of trustees, authorized defendant to construct a water system for the village, and subsequently brought an action to forfeit defendant's franchise. *Held*, that defendant, after constructing the system and accepting the benefits of the franchise, was estopped from attacking the validity of the resolutions on the ground that the village had no authority to pass them.

5. APPEAL—REFEREE'S FINDINGS—EVIDENCE—SUFFICIENCY.

A finding of fact by a referee will not be disturbed on appeal, unless clearly against the weight of the evidence.

6. SAME—JUDGMENT—PLEADINGS—ISSUES—RELIEF—CONFORMITY.

Code Civ. Proc. § 1207, provides that where there is an answer the court may grant the plaintiff any judgment consistent with the case made by the complaint and embraced within the issue. A village brought action to declare void resolutions of its board of trustees authorizing the defendant to construct a water system for it, on the ground that defendant had refused to connect the old hydrants owned by the village with the new water mains laid by the defendant in accordance with the terms of

the contract. Defendant filed an answer setting up affirmative defenses. *Held*, that a decree that defendant should specifically perform the contract by uniting the old hydrants with the new water mains was proper, and within the issues.

7. CORPORATIONS—WATER COMPANY—STREETS—MAINS.

A corporation organized under Laws 1890, c. 566, § 80, authorizing seven or more persons to form a corporation for the purpose of supplying water to any town or village in this state, has no authority to tear up the streets of a village to construct a water system, without authority from the village board of trustees.

Appeal from judgment on report of referee.

Action by the village of Bolivar against the Bolivar Water Company. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and RUMSEY, JJ.

W. T. Bliss, for appellant.

Charles H. Brown, for respondent.

SPRING, J.    This action was commenced September 6, 1899, by the plaintiff, a small incorporated village in the county of Allegany, to declare null and void certain resolutions, and consequent privileges, under which the defendant has constructed a system of waterworks in said village of Bolivar. Louis Seibert and Stanley F. Booth, in the early part of 1898, applied to the board of trustees of said village for permission to put in a system of waterworks therein. There was already in use for fire purposes in said village an inadequate plant, with 18 hydrants. On the 26th day of May, 1898, a resolution was passed by said board of trustees allowing said Seibert and Booth the use of the streets of said village for the purpose of putting in said system, and also according to them the use of the hydrants already owned by the village. This privilege was granted upon the express condition, embodied in said resolutions, that these hydrants were to be connected with the system constructed by said Seibert and Booth, and additional hydrants were to be added until the number of 35 were distributed throughout the village. Said resolutions further provided that said Seibert and Booth should lay said mains "in trenches of sufficient depth to be below danger of freezing in the streets shown on the plan made by J. E. Witmer, C. E., and now on file with the clerk of the board of trustees of said village of Bolivar." And, further, that the pipes through which the water was to run should be laid, and that the hydrants should be placed, in accordance with a plan or map on file with the clerk of said village; that, for the use of the water for fire protection, the village should pay annually to said parties the sum of $250, for a period of five years, with the right of renewal at that price at the expiration of said time. The resolutions required said grantees to complete said system by September 1, 1899, and, in case of failure so to do, they further provided that "this grant, franchise, or privilege be null and void, and of no effect."

At the time these resolutions were adopted it was supposed that there were about 25 hydrants already in use by the village. It was

later ascertained that there were only 18, and a resolution was accordingly passed by said board of trustees, on the 22d of August, 1898, modifying the original resolutions by requiring said Seibert and Booth to use said 18 hydrants, and to furnish 8 in addition, making 26 the total number to be attached to said system. Said resolution further provided that said hydrants were "to be placed at the points, as set down on said map mentioned in said grants, as shall be specified by this board," and that the village could at any time increase the number to 35 without additional expense, and tees were to be placed by said Seibert and Booth as indicated on the map, in readiness to connect the additional hydrants with the plant whenever the village elected to do so. These resolutions constituted the only right or franchise possessed by said Seibert and Booth for the use of said streets in putting in its water system. It is obvious that by these resolutions, accepted, as they were, by defendant and its predecessors, a contract was made assuring to these parties the use of the streets, with the privileges which that implies, and on the part of the village insuring to its inhabitants protection against fire. Jugla v. Trouttet, 120 N. Y. 21–27, 23 N. E. 1066. Seibert and Booth, on the 15th of October, 1898, transferred all their rights in said franchise and contract to the defendant, which had become incorporated, and of which said Seibert and Booth were two of the incorporators. The organization of this company for the purpose of putting in said system, pursuant to said resolutions, was assented to by the board of trustees. The defendant, in the fall of 1898, proceeded to put in said system, and during the summer of 1899 it was completed sufficiently to furnish water to private consumers. In the construction of the plant the pipes were laid to the depth of 5 feet. The hydrants already in use owned by the village were connected with pipes only 3 feet and 6 inches from the surface of the ground. While these hydrants were of the same general design as those purchased of the defendant, they were considerably shorter. The problem was thus presented to the defendant of connecting these hydrants with the conduits, so that the force and supply of water for fire purposes would be undiminished, and this difficulty gave rise to the controversy between the parties.

It appears that the officers of the defendant made no examination for the purpose of ascertaining the length of these 18 hydrants owned by the village. When they learned they were not of sufficient length to reach to their conduits, they made no attempt to attach them. The referee has found, upon facts amply justifying that finding, that 3 feet 6 inches constitute a sufficient depth to prevent danger from frost in connecting the hydrants with the pipes through which the water runs. There is also proof to show that, by a contrivance called a "goose neck," a connection may be made that will be practical and feasible, even though the hydrant is quite a distance above the line of pipe.

Various defenses are urged on behalf of the water company. It is contended that it manifested a willingness to comply with the terms of the contract, as embodied in the resolution. By the notice dated June 26, 1899, and served upon the plaintiff, the defendant

stated that its water plant was fully completed, and that it was ready "to furnish water to the village of Bolivar, as provided in said grants and franchises, such furnishing of water to date from the 1st day of July, 1899." At the time this notice was served the defendant knew that the hydrants of the village had not been connected with its system, and therefore knew that it was not ready to furnish water as contemplated by the resolutions. In answer to this notice, the board of trustees returned a notice dated July 10, 1899, calling attention to the fact that the defendant had not completed its contract until the 18 hydrants were attached to its water main, and further notifying it that, in the event of the failure of defendant to comply with the conditions of the contract on or before September 1, 1899, the franchise "will become null and void and of no effect, and a forfeiture" would be insisted upon. On July 17, 1899, the defendant notified the plaintiff in writing that if the "hydrants are actually detached from the water line to which they are now attached, and upon their actual delivery into the custody of this corporation," they would be attached to the mains of the defendant at the places indicated by the village. The board of trustees, on July 24th, replied to this notice that the burden was upon the defendant to make these connections, and not upon the village, and reiterating its determination to declare the grant forfeited in case of the failure to comply with the agreement. Nothing further having been done, on the 3d of September, 1899, resolutions were passed declaring null and void the franchise granted to said Seibert and Booth, and rescinding the agreement. This correspondence on the part of the plaintiff does not indicate an intention to repudiate the agreement, as claimed by the counsel for the appellant. The trustees, on the contrary, were seeking to secure the protection against fire which was the consideration for the privilege granted. Unless the hydrants were connected with the new plant, the purpose of the grant failed, and failure to perform ipso facto abrogated the franchise.

It is contended that the board of trustees had no authority to grant the franchise to the defendant originally; that the authority must have been vested in the board of water commissioners. Section 81 of the transportation corporations law (chapter 566, Laws 1890) gives authority to the board of trustees of any incorporated village "to contract in the name and behalf of the municipal corporation of which they are officers, for the term of one year or more, for the delivery by such company to the village or city of water through hydrants or otherwise, for the extinguishment of fires and for sanitary and other public purposes." This gave ample authority to the board of trustees to pass the resolutions which constitute the contract between the parties. While chapter 181 of the Laws of 1875 provides, in extenso, for the organization of the board of trustees into the board of water commissioners, yet the chief purpose of that organization arises where the water plant is owned by the municipality. But, aside from this question, the defendant is in no situation to assail these resolutions for lack of authority, for two reasons: (1) The answer contains no such defense; (2) the resolutions constitute the sole franchise or right which the defendant has, and it has availed

itself of the privileges accorded it, and is deriving a revenue from the use of its plant. After having accepted the benefits which accrued to it, it cannot repudiate the agreement on its part on the ground that its franchise was unauthorized.

Again, it is urged that it is impossible to connect the hydrants of the village with its plant, and that the finding of the referee that the defendant dug the trenches for its mains deeper than was necessary, "to be below the danger of freezing," was not warranted by the evidence. We think this was a fair question of fact, and it is not for this court to disturb that finding, unless against the weight of the evidence, and it is decisive of this case. The defendant relies upon its offer to make the connection with these hydrants if the village would detach them from its present system. This offer indicates that the defendant was satisfied that the connections could be made without impairing the utility of the system. In any event, the duty was imposed upon it "to furnish water for fire protection for the period of five years." The plant would not be completed until it was fully equipped to meet that requirement. To obtain that security to the property within the village was the chief inducement for the granting of the franchise. The village was not to perform any work in the construction of the system. Its trustees were to designate where the hydrants were to be located, but they were to be placed by the defendant. Seibert and Booth knew the hydrants of the village must be detached from the old plant before they could become a part of the new system. They understood they must disconnect these hydrants, and attach them to their plant, when they undertook "to furnish water to the village for fire protection, and through the said hydrants."

It is claimed that the action was brought to obtain a rescission of the agreement, and that specific performance was improper. All the facts are set forth in the complaint which warrant the conclusions reached by the referee, and they are well sustained by the evidence. The referee made the most lenient and favorable determination for the defendant which the facts permitted. A strict and technical construction of the agreement, in view of the signal failure of the defendant to comply with its most important provision, would have justified the referee in terminating the franchise, and thus destroying the plant of the defendant. The result of this would have been to render valueless the bonds held by the defendant Richardson, so far as that value depended upon the lien which the bonds created upon the plant. The referee, very properly, instead of enforcing the contract in this drastic way, gave the defendant the right to perform its contract specifically, which would protect its property, and also the defendant Richardson, as trustee. The judgment directed by the referee was embraced "within the issue," and therefore permissible. Code Civ. Proc. § 1207; Valentine v. Richardt, 126 N. Y. 272, 27 N. E. 255.

It is urged that the defendant could tear up the streets of the village, and put in its water system, without any authority or grant from the village. We think the contrary is sustained by authority. Section 80, c. 566, Laws 1890; Barhite v. Telephone Co., 50 App. Div.

25–31, 63 N. Y. Supp. 659. The trend of modern legislation is to transmit this power from the state legislature to the local body charged with the supervision and government of the municipality. Barhite v. Telephone Co., supra. The ordinances enacted by the plaintiff also prohibit this use without the permission of the president or trustees, expressly providing that no ditch shall be made for a main or side water pipe for any purpose in said village except by authority of said president or trustees, and under the supervision of the street commissioner of the village.

The referee properly disposed of the case, and the judgment is affirmed, with costs to the respondent. All concur.