ROCHESTER AND LAKE ONTARIO WATER COMPANY, Respondent, *v.* THE CITY OF ROCHESTER, Appellant.

*Water company organized under the Transportation Corporations Law — it may lay its mains in the streets of a city adjoining a village supplied by it — the provisions of the city charter held to be inapplicable — rights of the city as to the selection of the route — the water company may not supply water to the citizens without the city's consent — it may lay its mains on the right of way of a railroad company with its consent — power of the Legislature to impair its franchise.*

The Rochester and Lake Ontario Water Company was incorporated pursuant to the Transportation Corporations Law (Laws of 1890, chap. 566) for the purpose of supplying water taken from Lake Ontario to three towns lying between Lake Ontario and the city of Rochester and two villages located beyond the city of Rochester. It obtained from the towns and the municipal authorities of the two villages the preliminary permit prescribed by section 80 of the Transportation Corporations Law, but obtained no permit from the municipal authorities of the city of Rochester. It obtained from the New York Central and Hudson River Railroad Company the right to lay its mains along the right of way of the railroad company in the city of Rochester. The railroad company's right of way intersected a number of streets in the city of Rochester and when the water company attempted to dig its trenches across those streets the municipal authorities forcibly prevented it from doing so.

The water company thereupon brought an action against the city of Rochester to prevent it from interfering with it in laying its pipes across the intersecting streets.

In this action the court found that it was necessary for the water company, in order to carry out the purposes of its incorporation, to lay its water mains across the intersecting streets. The city made no complaint as to the particular route chosen by the water company, but denied altogether the latter's right to use its streets without the consent of the municipal authorities.

*Held,* that the right to lay its mains across the city streets without the consent of the municipal authorities was conferred upon the corporation by subdivision 2 of section 82 of the Transportation Corporations Law, as amended by chapter 617 of the Laws of 1892, which authorizes such companies "to lay their water pipes in any streets or avenues or public places of an adjoining city, town or village to the city, town or village where such permit has been obtained;"

That the provisions of the city charter committing the distribution of water and the laying of mains in the city streets to the control of the common council were applicable only to the supplying of water to the people of the city of Rochester, and had no reference to the statutory provision authorizing a water company to use the streets of the city to enable it to furnish water to an adjacent village.

*Quære,* as to the right of the municipality to interfere in the selection of a particular route because of other existing uses of the streets affected thereby;

That the railroad company, owning the fee of the land outside of the streets, had power to permit the water company to lay its mains along its right of way;

That the Legislature had no power, after the water company had expended moneys and entered into binding engagements on the faith of its franchises, to impair such franchises by statutes which were apparently intended to prevent the water company from laying its pipes across the intersecting streets of the city of Rochester, particularly when such statutes were not passed until after the action had been commenced;

That the right of the water company to lay its mains through the city of Rochester did not confer upon the water company the right, without the consent of the city which maintained a water system of its own, to supply with water such of the inhabitants of the city as it could reach without crossing the city streets.

APPEAL by the defendant, The City of Rochester, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Monroe on the 20th day of April, 1903, upon the decision of the court, rendered after a trial at the Monroe Special Term, granting a perpetual injunction restraining the defendant from interfering with the plaintiff in laying water pipes through certain streets in the city of Rochester.

*William A. Sutherland* and *John Van Voorhis*, for the appellant.

*Albert H. Harris*, for the respondent.

SPRING, J.:

The plaintiff is a water company, incorporated pursuant to the Transportation Corporations Law (Laws of 1890, chap. 566, as amd.) for the purpose of furnishing water to the villages of Brighton and Fairport and three towns. The water is to be taken from Lake Ontario west of the mouth of the Genesee river, and the towns are between the lake and the city, while the latter is between the towns and the villages. The preliminary permit prescribed by section 80 of the law mentioned (as amd. by Laws of 1892, chap. 617) has been granted by the municipal authorities of these villages and towns. None has been obtained from the city of Rochester. The route has been adopted. The right of way entirely through the city of Rochester along the lands of the New York Central and Hudson River Railroad Company has been acquired and a contract has been entered into with that company to furnish it with water in the villages of Brighton and Fairport, as well as in the city of

Rochester along its right of way. The water works company has also assumed and undertaken to execute an agreement with the village of Brighton to supply it with adequate and wholesome water or in default thereof to pay to said village $2,000 as liquidated damages. After these preliminaries had been consummated, the plaintiff, for the purpose of laying its pipes or mains across the streets of the said city and along the right of way of the said railroad company, commenced the digging of trenches therefor at North Union street and Culver street in said city. The municipal authorities forcibly interrupted the work and this action was commenced.

A preliminary injunction was granted and an appeal from the order was taken to this court. The parties desired a speedy determination of the action and it has since been tried, resulting in the decision and judgment from which the present appeal has been taken.

The Transportation Corporations Law, referred to in defining the additional powers conferred upon water works corporations, includes within section 82, subdivision 2, as amended by chapter 617 of the Laws of 1892, the power "to lay their water pipes in any streets or avenues or public places of an adjoining city, town or village to the city, town or village where such permit has been obtained." Originally this right was limited to an adjoining village or town, but was amended by the act mentioned to extend to a city adjoining a town or village which has granted the requisite permit to a water works company.

In the present case, as will be observed, the corporation has located its lines through several towns between the city of Rochester and the source of supply and also intends to supply the inhabitants of those towns with water, and it has also obtained the necessary permit and entered into contracts to furnish water to the inhabitants of the villages of Brighton and Fairport, and the city of Rochester intervenes the towns mentioned and these villages. It may be fairly said, therefore, that it is a necessity to pass through the city of Rochester in order to complete its line, and the right of way has been secured the whole distance in the city to carry out the project contemplated by its incorporation.

In its twelfth finding of fact the court has found: "It is necessary for the plaintiff, in order to carry out the purposes of its incor-

poration and to fulfill the contracts which it has made and assumed, to lay its water mains along the route which it has adopted and on the continuous strip of land through the city of Rochester in which it has an easement as aforesaid, and to cross the intersecting streets in said city."

In *Village of Pelham Manor* v. *New Rochelle Water Company* (143 N. Y. 532) New Rochelle and Pelham Manor were adjoining villages. The water company had entered into a contract with the authorities of the village of New Rochelle to supply its inhabitants with wholesome water. Pelham Manor did not intervene the source of supply and New Rochelle, but in order to carry out the plan of the water company it was necessary, in the sense that it was desirable and judicious, to run its mains through the latter village. The judge at Special Term had found the use of the streets of Pelham Manor was necessary to carry out the plans devised, and the judgment was sustained by the Court of Appeals. The court, after commenting upon subdivision 2 of section 82 of the Transportation Corporations Law of 1890, says (at p. 536): " But the Legislature evidently anticipated that a water company in performing its functions of supplying the town, and every part of it which granted the permit, with water might, for some reason, find it necessary to cross the boundary line of an adjoining town and use its highways, not for the purpose of supplying that town, but for the purpose of properly and effectively executing the purpose of its creation. Such necessity has been found in this case as matter of fact by the trial court, and hence the permission of the municipal authorities who had charge and control of the highway was not necessary."

It is contended by the counsel for the appellant that by the charter of the city the distribution of water, the laying of mains in the streets, etc., are within the control of the common council. (Laws of 1880, chap. 14, § 150, as amd. by Laws of 1890, chap. 561; Id. §§ 155, 157; Charter of Second Class Cities [Laws of 1898, chap. 182], § 110, as amd. by Laws of 1899, chap. 581). These provisions, however, are applicable only to the supplying of wholesome water to the people of Rochester, a subject which I shall discuss later. They have no reference to the statutory provision authorizing the use of the streets of the city to enable a water company to meet its engagement to afford water to an adjacent village. The streets of the defend-

ant are undoubtedly within the regulation and control of the munici-
pal authorities; so the trustees of Pelham Manor possessed the like
authority over the streets of that village, and that subject was com-
mented on by the Court of Appeals in the case referred to. The
Legislature, in whom the power primarily rests, has granted to a
water works company for the distinct purpose mentioned the privi-
lege of making use of the streets of a city or village, but the privi-
lege is to be exercised within the fair control and superintendence
of the commissioner of public works or the officer to whom the
duty of immediate oversight is intrusted. The principle is the
same as obtains where a telephone company which derives its fran-
chise to use the streets directly from the Legislature (*Barhite* v.
*Home Tel. Co.*, 50 App. Div. 25) endeavors to place its poles or run
its wires in a conduit in a street. The manner of so doing and the
location of the poles are subject to regulation and supervision by
the local authorities.

The various acts and supplementary ordinances of the common
council preventing the use of the public streets and sidewalks except
under the direction of the common council (for instance, subdivision
7 of section 40 of the charter [Laws of 1880, chap. 14], as amd. by
Laws of 1894, chap. 28) relate to the right of regulation and con-
trol. They do not inhibit the Legislature from granting a right
to the use of the streets of a city for a specific purpose severed
from any benefit or detriment to its own people, although exe-
cuted under the superintendence of the municipal authorities.

It is also urged that the railroad company has no authority to
grant to the water works company the use of its right of way for
placing its mains. So far as the land owned by the railroad com-
pany outside of the streets is affected by this grant, the title in fee
is in the railroad company and I assume the common council may
not dictate or control its use unless necessary for the preservation
of the public health or to prevent a nuisance or for some like rea-
son. In so far as the grant extended to the putting in of mains in
the streets, that is a matter between the railroad company and the
water works company. An abutting owner may be entitled to dam-
ages for the placing of poles along the highway, but this is a bene-
fit wholly disconnected from the rights of the public in the street
or the resulting superintendence over it by the town or municipal

authorities. The effect of the grant to use its land in crossing the streets amounts to a waiver of damages by the railroad company. The right to pass over the streets as affecting the city is by virtue of the act of the Legislature from which I have quoted. They are independent rights — the one flowing from the ownership of the property, the other from the municipal supervision of the streets. If, under the right granted by subdivision 2 of section 82 of the Transportation Corporations Law (as amd. by Laws of 1892, chap. 617), the water company instead of going in a roundabout course along certain streets were able to purchase a right of way across a lot and thus cut short the distance, the city authorities might not prevent the water company from so doing. If it were only necessary to cross a corner of the city and no street was along the course and the company was able to secure from the owners the right of passage across the land within the city, it would be no concern of the latter. The municipal authorities are interested in two propositions only; One the use of the streets by the company without its permission; the other, the distribution of water to its citizens or industries. The railroad company does not become a purveyor of water. It simply grants permission to a lawful company to place its pipes along land which it owns. If the city had given its permission to the plaintiff to pass under its streets no one would question the right of the railroad company to let the plaintiff cross its right of way or run along it. If the right to the use of the streets were eliminated from this controversy and the plaintiff had acquired an easement of the railroad company over its land outside of the streets, that easement would not be an excessive use of its authority. We concede a railroad company is incorporated for a specific purpose. But on the one hand by reason of this restriction it is not enabled to block the growth of a municipality and prevent the location of manufacturing plants, the building of other railroads or of the mains used in distributing gas or water throughout the city. On the other hand, it is not to be hindered in granting an easement not in conflict with its charter. The question as to the power of a railroad company is a subsidiary and incidental one. The real question is, can the plaintiff, a water company, use the streets of the city of Rochester to enable it to reach adjacent villages with its water system? That right, if it exists at all, is wholly independ-

ent of any easement granted by a corporation or an individual, and it depends upon the construction of the statutes, to which reference has been made. A situation may be conceived where the tearing up of the streets to convey water to a contiguous village may be attended with a displacement of pipes or conduits already lawfully located or with other serious injury, and on that account the right granted by the statute might be refused. That condition is not before us. In any event ample protection against any such disturbance is secured to the city by the terms of the judgment appealed from, and there is no complaint that they do not amply conserve the rights of the city, if the right to use the streets for the purpose mentioned exist at all. We do not intend to decide that a water company, passing through a city to reach an adjoining village, may arbitrarily select its route through such city. The interests of the city and of the water company are both involved in the selection of the route. If another course than the one adopted through the city is more feasible or attended with less disturbance to the streets, the municipal authorities may not be bound by the one chosen by the company. In this case no other route was suggested, no complaint was made as to the one selected, but the city denied altogether the right of the respondent to use its streets without the consent of the municipal authorities.

By chapter 59, Laws of 1903, section 157 of the charter of the city of Rochester was amended by giving the commissioner of public works authority to lay pipes in the streets for the conveyance of water, and then continues: "No other person or corporation shall enter upon or excavate any road, street, highway or public place in the city of Rochester, for the purpose of laying down pipes for the conveyance of water, without the permission of the common council." This act was evidently designed to shut off the plaintiff from executing the project intended by its incorporation. It was not an amendment to the Transportation Corporations Law, and it is an open question whether its effect is to nullify the provision of that act permitting the use of the streets by the plaintiff.

Again, the act was signed by the Governor and became a law on March 19, 1903. This action was then pending. The decision granting the injunction order restraining the interference by the defendant was made on March eighteenth. The formal order, how-

ever, was not entered until March twentieth, but by its terms
related back to the date of the decision, and that was its legal effect
anyway. (*Robinson* v. *Govers*, 138 N. Y. 425; 1 Rumsey's Pr.
[2d ed.] 278.) It is, therefore, very doubtful whether the effect of
this decision could be destroyed by an act of the Legislature which
did not become operative until after the rendition of the decision.

Section 157 of the charter was further amended and the power of
the municipality extended by an act of the Legislature (Laws of 1903,
chap. 553) which became operative on May 12, 1903, and after the
judgment now before us had been entered and an appeal taken
therefrom to this court. The objections suggested to chapter 59
of the Laws of 1903 apply with greater force to the amendment.

Passing these preliminary questions, let us consider the effect of
these acts on the merits. The plaintiff was incorporated for a specific
purpose. It paid the State for the privilege of constructing and main-
taining its water system between two given points. When chapter 59
of the Laws of 1903 went into operation, the plaintiff by virtue
of its franchise had located the right of way, entered into agree-
ments for supplying the water to villages, and in one instance had obli-
gated itself to pay $2,000 in the event of failure to perform. It
had secured the right of way from the railroad company and had
actually commenced excavating the streets. The court has found:
" The plaintiff has acted upon the faith of the franchise, has acquired
property and assumed obligations in reliance thereon, and its rights
thereunder have become vested." The franchise, especially when
coupled with the expenditure of money and the obligation to pay
money made on the faith of this grant, was more than a mere
license. It was a contract with the State and the franchise was
property. (*People ex rel. Woodhaven Gas Co.* v. *Deehan*, 153 N.
Y. 528; *People* v. *O'Brien*, 111 id. 1, 41 *et seq.;* *Skaneateles
Water Works Co.* v. *Village of Skaneateles*, 161 id. 154; *Ghee* v.
*Northern Union Gas Co.*, 158 id. 510.)

In the *Deehan Case* (*supra*) the court (at p. 532) said that two
propositions have been conceded by the Appellate Division in its
review of the case, one of which is: " That the consent of the town
authorities conferred upon the relator a franchise to carry on its
business in the town and to lay conductors in the streets and high-
ways for the purpose of delivering gas. That such a franchise is

property that cannot be destroyed or taken from it or rendered use-less by the arbitrary act of the village authorities in refusing the permit to place the conductors under the streets."

If this is property by virtue of the act of the Legislature and the sovereign power which created it, the Legislature has no right to destroy it after money has been expended and binding engagements made and in process of fulfillment on the strength of it.    The prin-ciple that a grant of this kind by a sovereign power is a contract and inviolable was early decided by the United States Supreme Court in *Dartmouth College* v. *Woodward* (4 Wheat. 518), and has since been often reiterated by that court.    (*New Orleans Gas Co.* v. *Louisiana Light Co.*, 115 U. S. 650; *Pearsall* v. *Great Northern Ry.*, 161 id. 646.)    In the latter case, after a discussion of the *Dart-mouth College* case, the court added (at p. 661): "Subsequent cases have settled the law that, wherever property rights have been acquired by virtue of a corporate charter, such rights, so far as they are necessary to the full and complete enjoyment of the main object of the grant, are contracts and beyond the reach of destructive legislation."

There are many cases, some of which are cited upon the briefs of the appellant's counsel, holding that the manner of carrying out a privi-lege granted to a corporation is within the regulation of the Legis-lature, and that the charter is acquired with the knowledge of the existence in the law-making body of the right to exercise dominion over the corporation in this regard.    Those authorities, as I view them, all relate to the question of regulation and control, and they do not go to the extent of upholding legislation which will destroy the franchise or impair existing contracts.

It is obvious, however, that the incidental privilege of supplying water to the New York Central and Hudson River Railroad Com-pany and contiguous property owners within the city of Rochester was one of the chief inducements to the organization of the plaintiff; although that intention was not embodied in its certificate of incorpo-ration filed with the Secretary of State and upon which its organiza-tion tax was accepted by the State.    Before the commencement of the action the plaintiff had entered into a written agreement with the New York Central and Hudson River Railroad Company to supply it with water in large quantities within the city of Rochester, and

a like agreement was entered into with the Buffalo, Rochester and Pittsburg Railroad Company. The Central Company is now taking water from the city plant. The counsel for the respondent further contends that it expects to furnish water to other plants and industries along its right of way in the city.

It will be readily apprehended that there is nothing in the act authorizing the plaintiff to pass through the city of Rochester to enable it to reach the villages of Brighton and Fairport implying a right to distribute water from its system to the inhabitants of Rochester. The section of the statute which gives that privilege is for the benefit of the people of the villages. It is found in subdivision 2 of section 82 of the Transportation Corporations Law (as amd. by Laws of 1892, chap. 617) and in no sense relates to the distribution of water within the city of Rochester. Accordingly the privilege of using the streets of the city of Rochester to convey water to these villages does not carry with it by implication the more important advantage of supplying water to the people of the city or to some portion of them.

The city of Rochester owns its own water system and it was installed at an expense of $11,000,000. By section 150 of the charter, as amended by chapter 561 of the Laws of 1890, the executive board (now the commissioner of public works) is given control over the system and of its extensions " and of furnishing the water to citizens and the care and repair of said works." Again, by section 155 of the charter it is provided that extensions " shall not be otherwise constructed than as determined by the common council."

By section 110 of the charter of second class cities (Laws of 1898, chap. 182, as amd. by Laws of 1899, chap. 581) the commissioner of public works is required " to see that the city has an abundant supply of wholesome water for public and private use; to devise the plans and sources of water supply; to plan and supervise the distribution of water through the city; to protect it against contamination; to prescribe rules and regulations for its use, which, when ratified and approved by the common council, shall have the same force and effect as an ordinance by the common council enacted."

It is plain, therefore, that the municipality is given the control of furnishing the water to its citizens. It may do this by its own

system. It may delegate the right to a company to supply it. It would, therefore, be an anomalous doctrine that a corporation without the permission of the city may put in its own water system and furnish water to the citizens. If the present plaintiff is seeking to accomplish this purpose through the pretense of supplying water to the few inhabitants of a bordering village, it certainly has no better standing than if it endeavored to gain its end with the avowed design of supplying water to the people of the city. The claim of the plaintiff is that it has the right to furnish water to the railroad company and the manufacturing plants accessible wherever it may be done without crossing a street of the city. This may include a very large portion of the city. If it has the right to supply water to contiguous industries, it may also supply it to all the inhabitants who are within reach without crossing a street. The New York Central and Hudson River Railroad Company crosses twenty-nine streets within the city, and if the right is to be extended to its legitimate end, then the city water system may be shorn of much of its value and efficiency. The plaintiff could make similar contracts with the other railroad companies to supply villages or towns in close proximity and thus be in a situation to furnish the whole city with water.

The railroad company was organized for railroad purposes. Its franchise and right to cross the streets is to enable it to operate its railroad. It had no franchise and no right to give to the plaintiff to put in a water system. Whatever right the plaintiff acquired came from the Legislature. The contract with the railroad company added nothing to the rights of the plaintiff so far as the city was concerned. The fact that the plaintiff expected to extend its system through the city with the object of reaching the citizens of Brighton gives it no better standing so far as the right to supply the city with water is affected than if it were in the city unlawfully or as an interloper. It does not get into the city for the benefit of the citizens of Rochester. The furnishing of its citizens with pure and wholesome water is an incident of a municipality. The preservation of health is one of its chief functions. For the accomplishment of this object wells may be destroyed and private water lines required to be abandoned. The control of the water supply of a

APP. DIV.—VOL. LXXXIV.     6

city is more than a mere regulation. As stated, it may furnish the supply itself. It may permit a company to supply it. It may exclude a corporation from the privilege. The whole matter is within the dominion of the proper authorities. The right to the distribution of water throughout the city by a company is a valuable one. The municipality is entitled to reap the benefit of this franchise.

Section 81 of the Transportation Corporations Law (as amd. by Laws of 1896, chap. 678) requires any water company to supply water to the inhabitants of any city through which its mains pass. This does not mean that the city authorities are bound, against their will, to accept the water to the destruction of the plant which the city may own and operate. The obvious interpretation is that the city may require the water company, as a condition of its use of the streets, to supply water to the city at reasonable rates, and that contracts may be entered into for that purpose.

Again, it is to be noted that section 80 of the said law (as amd. by Laws of 1892, chap. 617) requires any water company expecting to supply the inhabitants of a city, town or village with water to obtain the permit of the authorities of the municipality whose people are to be thus supplied. The permission to use the streets of a city for the purpose of laying pipes to reach an adjoining town or village does not impair the force of this requirement. The one is applicable where the citizens of the city are to be benefited, and the other where the benefit accrues to the inhabitants of the coterminous village or town. They are not in conflict. The necessary permit to enter the city of Rochester to furnish water to the people of that city or any portion of them has not been obtained by the plaintiff. This is an indispensable prerequisite.

Barring the preliminary objections already suggested, the acts referred to passed during the present year would be effective to prevent the plaintiff from distributing water to the people of the city. The franchise granted to the plaintiff did not include the right to distribute water to the inhabitants of Rochester, and so there is no impairment of any contract within the compass of the franchise granted to the plaintiff. Independently of these acts, however, we are clear that the water company possessed no authority to supply the inhabitants of the city with water.

It follows that the judgment appealed from should be affirmed, with costs.

ADAMS, P. J., McLENNAN and HISCOCK, JJ., concurred; WILLIAMS, J., concurred in result in memorandum filed with the clerk.

WILLIAMS, J. (concurring):

I concur in the affirmance of the judgment, but decline to consider or pass upon the question as to the furnishing of water to the railroad company within the city of Rochester. That question is not necessary to a determination of this appeal and the railroad company is not before the court. The prevailing opinion, after passing upon the question favorably to the appellant, still concludes that the judgment should be affirmed. In effect the conclusion is that even if the water may not be furnished to the railroad company, still the judgment is correct and should be affirmed. Then why consider the question at all? As it does not affect the result the court should not in advance take its position as to a question that may come before the court in the future when the railroad company, being a party, may be heard before decision upon the question is rendered.

Judgment affirmed, with costs.