(110 App. Div. 625)

VILLAGE OF CARTHAGE v. CENTRAL NEW YORK TELEPHONE & TELEGRAPH CO.

(Supreme Court, Appellate Division, Fourth Department. January 17, 1906.)

1. TELEGRAPHS AND TELEPHONES—PLACING OF WIRES—REGULATION BY VILLAGE.

Though Transportation Corporation Law, Laws 1890, p. 1152, c. 566, § 102, authorizes a telephone company to construct and maintain its line on, over, and under the streets and highways, a village, under its special charter, authorizing its trustees to prevent incumbering the streets, and Village Law, Laws 1897, p. 455, c. 414, § 340, giving it all the powers of villages incorporated under such law, section 89, subd. 9 (page 394), empowering the trustees to regulate the erection of telephone poles or stringing of wires over the streets, and section 141 (page 414), declaring the streets of a village to be under the exclusive control of the trustees, may in a proper case regulate the use of its street by a telephone company to the extent of requiring it to place its wires underground.

2. SAME—DISCRIMINATION.

Where a telephone company extends its lines in a village without permission of the trustees, the fact that the trustees require such extension to be taken down and placed underground, without requiring a rival company to place its wires underground, is not conclusive of discrimination; there being no such requirement as to wires previously erected, and the rival company not appearing to have made extensions at or after the same time.

3. INJUNCTION—VACATING PRELIMINARY ORDER.

A preliminary order restraining a telephone company from continuing to string wires in the street, pending the action to require it to place them underground, should not be vacated; the facts as to propriety thereof being in dispute.

McLennan, P. J., and Nash, J., dissenting.

Appeal from Special Term, Onondaga County.

Action by the village of Carthage against the Central New York

Telephone & Telegraph Company. From an order of the Special Term, (96 N. Y. Supp. 917) vacating a preliminary injunction, plaintiff appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, NASH, and KRUSE, JJ.

A. E. Kilby, for appellant.

W. B. Van Allen and F. G. Fincke, for respondent.

KRUSE, J. The defendant is a domestic telephone corporation. For some years it has maintained a telephone system in the village of Carthage. Its lines have been maintained upon poles in the streets of the village. Another corporation has likewise maintained a telephone system in the same village; both companies operating to some extent within the same territory. The defendant, desiring to enlarge its system and extend its lines, in the winter of 1904 and prior to the 1st day of January, 1905, so it is alleged, applied to the board of trustees of the village for leave to set poles in the streets of the village, and thereupon, on or about the 25th of April, 1905, the board of trustees passed a resolution, which, after reciting that the defendant telephone company had actually been at work erecting its poles in the streets, which had become a nuisance and obnoxious to the people and injurious to the use of the public streets, required the telephone company to remove the poles thus erected and maintain its lines by means of conduits under the streets only. The defendant continued its work of erecting the poles notwithstanding such requirement of the board of trustees, and thereupon this action was brought to restrain the defendant from continuing to do so. A preliminary injunction order was granted by the county judge of Jefferson county restraining the defendant from so continuing its work of erecting its poles in the streets of the village during the pendency of the action, which order was vacated by the Special Term of this court, and from that order this appeal has been taken.

The defendant challenges the right of the village to require it, in extending its lines in the streets of the village, to put them underground, contending, first, that it has no such power; and, second, that, if it has such authority, it has exercised the same in an arbitrary and unreasonable manner. We think the plaintiff village has the power, and in a proper case ought to exercise it.

1. As regards the power: It is true that the defendant derives its right to maintain its lines in the streets of the village directly from the Legislature, and that it may construct and maintain its lines upon, over, or under the streets and highways. Transportation Corporations Law, Laws 1890, p. 1152, c. 566, § 102. It is also true that the Legislature may limit, restrict, or revoke this right at any time the public interest so requires. American Rapid Teleg. Co. v. Hess, 125 N. Y. 641, 26 N. E. 919, 13 L. R. A. 454, 21 Am. St. Rep. 764; People v. Squire, 107 N. Y. 593, 14 N. E. 820, 1 Am. St. Rep. 893, affirmed in 145 U. S. 175, 12 Sup. Ct. 880, 36 L. Ed. 666. It is equally well settled that the Legislature may delegate to municipal corporations the right to reasonably control and regulate the use by transportation companies of the streets and highways of the state for the purpose of constructing and maintaining its lines, and that such right to so use the streets and

highways is at all times subject to reasonable supervision and control by the authorities of the municipality in which these streets and highways are located and subject to its general police power. New Union Telephone Co. v. Marsh, 96 App. Div. 122, 89 N. Y. Supp. 79; Barhite v. Home Telephone Co., 50 App. Div. 25, 63 N. Y. Supp. 659; City of Rochester v. Bell Telephone Co., 52 App. Div. 6, 64 N. Y. Supp. 804. And in this latter case it has been expressly held by this court that, in a proper case, the municipality may require a telephone company to remove its poles and place its lines in a conduit underground.

It is, however, contended by the defendant that no such power has been delegated by the Legislature to this village. While it is organized under a special charter from the Legislature (Laws 1869, p. 1971, c. 834), it also possesses all the powers and is subject to all the liabilities and responsibilities conferred or imposed upon a village incorporated under the Village Law, Laws 1897, p. 455, c. 414, § 340. Under its special charter the board of trustees are not only commissioners of highways in the village (section 9, tit. 5), but the board is expressly authorized to prevent incumbering the streets, to prevent and remove danger from fire, to protect shade trees, to compel the removal and abatement of nuisances, and generally to make all rules and regulations not inconsistent with law as may be necessary and proper for carrying into full effect the purposes of the corporation and the powers and privileges granted by the charter. Village Charter, tit. 3, § 3, subd. 8; subdivision 15 as amended by Laws 1896, p. 293, c. 252, § 4; and tit. 3, § 3, subds. 18, 22, 27. And the village law enlarges somewhat this power. Stress is laid upon the fact that subdivision 9 of section 89 of the village law only empowers the board of trustees of the village to regulate the erection of telegraph, telephone, or electric light poles, or stringing of wires over the streets, and it is contended that this so limits and restricts the power of the villages that it may not regulate them otherwise, or, at all events, that they may not require the wires to be put underground. We think this right is not so limited and restricted. Very likely when this provision became a law the usual method of maintaining these lines was by means of poles and stringing wires over the streets. But independently of this express provision, and in addition to the specific powers which have been referred to, authority is conferred in general terms upon the board of trustees under the village law, by section 141, in the following terms:

"The streets and public grounds of a village, except as provided in the next section [which refers to bridges under certain circumstances], are under the exclusive control and supervision of the board of trustees."

As has already been stated, the right of transportation companies to use the streets and highways of the state is not absolute and unconditional, permitting such companies to use the streets and highways without regard to the safety or convenience of the public, but it is still subject to the paramount right to use the street for public travel and subject to reasonable regulations, so as not to unnecessarily interfere with the general welfare of the municipality, and under the powers conferred upon this village we think it has authority in a proper case to regulate the use of its streets by this telephone company, even to the extent of requiring it to place its wires underground.

2. The question whether the requirement of the village authorities was reasonable is one to be determined from all the circumstances, and its determination should await the trial of the action. The facts are in dispute. If the claim of the village is correct, it cannot be said that the action of its board of trustees was arbitrary or unreasonable. It is contended on its behalf that the telephone poles, cross-arms, and wires will impede travel and prevent the reasonable use of the streets by the public; that the network of wires will make it impossible to guard against and prevent fires, and will be a menace to life and property; and that it is entirely feasible and practical to put these wires underground. Facts are stated in the affidavits which tend to prove these allegations, and, so far as the facts are in dispute, the question should be left for determination upon the trial. The mere fact that the rival telephone company has not been required to take down its poles, or that the resolution was not general in its terms, is not a controlling circumstance to show that there has been discrimination. This defendant has not been required to take down poles which were erected prior to the making of the extension or enlargement, and it does not appear that the other company has asked to extend its lines since the board of trustees has determined to require all extensions thereafter made to be put underground. In a similar case where the facts were in dispute (City of Rochester v. Bell Telephone Company, supra), where a like question was presented, the court refused to vacate the injunction order, and we think a like disposition should have been made of this injunction order.

The order vacating and setting aside the injunction order should be reversed, with $10 costs and disbursements, and the injunction order reinstated. All concur, except McLENNAN, P. J., and NASH, J., who dissent.

NASH, J. (dissenting). The defendant was incorporated under the act of 1848, and is entitled to all the rights and privileges given telephone companies by the transportation corporations law. It was duly incorporated in 1882, and shortly thereafter acquired the exchange, poles, wires, and fixtures of the Watertown Telephone Company in the village of Carthage, and has ever since maintained a system there, together with lines connecting that village with other towns and villages. The defendant ever since its organization maintained its telephone system in the village of Carthage by means of poles set in the ground in the streets of the village, without hindrance or objection of the village, or any of its officers, until about the month of December, 1904, when an application was made to the defendant to the board of trustees that it take some action with reference to the location in the streets of poles which the defendant desired to erect for the purpose of extending its telephone system. The representatives of the defendant upon such application claimed that the defendant had the right to erect poles in and along the streets of the village. The board of trustees declined to allow the defendant to extend its telephone system in the village unless the wires were placed beneath the surface of the streets; and at a regular meeting of the board adopted resolutions to the

effect that the defendant be allowed to maintain an exchange in the village by means of conduits under the streets only, the location of which to be under the direction of the board; and further resolved that no more poles be erected in said streets by the defendant, and that it be required to remove all of its poles erected since January 1, 1905. The defendant refused to comply therewith, and proceeded with the erection of its poles and cross-arms, and the stringing of wires thereon, in the streets of the village, until restrained by the service of the temporary injunction. The action is brought to restrain the defendant from extending its telephone system in the manner proposed. The complaint demands judgment that a permanent injunction issue enjoining the defendant from setting any more poles in the public streets of the village, and that the defendant be compelled to remove from such streets all poles, cross-arms, and wires attached thereto, which it, or its agent or servants, have set or placed in the above said streets, since January 1, 1905.

The question here is whether the plaintiff is entitled to such permanent relief, which, if granted, will enable the plaintiff to exclude the defendant from the further use of the streets for the purpose of extending its telephone system in said village. The contention of the plaintiff is that the village has power to restrict the defendant to underground extension. Among the powers conferred upon villages by the general village act (Laws 1897, p. 394, c. 414, § 89, subd. 9), the one which bears most directly upon the matter at issue, is the power "to regulate the erection of telegraph, telephone or electric light poles, or the stringing of wires over, in or upon the streets or public grounds, or upon, over or in front of any building." The plaintiff contends "that this power alone, carried with it the police power to do just what the village did do in preventing further erection of poles and wires in its streets." The power to regulate cannot with reason be regarded as conferring the power to prohibit. The power thus conferred by the general village act is simply to regulate the erection of poles and the stringing of wires, matters which cannot possibly have any reference to the laying of wires in conduits underground.

The Legislature has, in express terms, given to telegraph and telephone corporations the right to occupy the streets of villages for the purpose of constructing and maintaining their lines. Section 102 of the transportation corporations law (Laws 1890, p. 1152, c. 566) provides:

"Any such corporation may erect, construct and maintain the necessary fixtures for its lines upon, over or under any of the streets and highways, and through and across or under any of the waters within the limits of the state, and upon, through or over any other land, subject to the right of the owners thereof to full compensation for the same."

By this section the right of telegraph and telephone corporations to use the public streets or highways for the construction and maintenance of its lines is given in unmistakable language, and the consent of the local body is not required. Its franchise comes directly from the Legislature to the corporation. Barhite v. Home Telephone Co., 50 App. Div. 25, 63 N. Y. Supp. 659. Rochester v. Bell Telephone Co., 52 App. Div. 6, 64 N. Y. Supp. 804. Whenever a corporation of this kind avails itself of the legislative grant, the manner of its exercise, the

location of its poles, the stringing of its wires, etc., are within the scope and regulation of the local legislative body. This right of regulation is, however, entirely distinct from the original granting of the privilege, and is subordinate thereto. White on Corporations (6th Ed.) 248. In other words, the local legislative body may, in the exercise of the police power, regulate the erection of poles, and the stringing of wires, so as to prevent the erection or placing of poles and wires where, or in such manner that, the property will be in danger in case of fire, or otherwise be an injury to or endanger property, or the use of the streets by the public, and generally to make such rules and regulations as will prevent or abate nuisances.

The complaint alleges that the defendant in erecting its poles and cross-arms, and stringing its wires, has done so in such a manner as to greatly impede travel on said streets and impair their usefulness to the public; and it is now doing so, to the annoyance of the residents thereon, and that the requirement that the defendant construct its system in said village by means of conduits underground is entirely practical, and will best subserve the interests of the public and its rights upon the said streets. There are no allegations of the complaint by which it is made to appear that a nuisance has been or will be created, or that any property will be endangered by the erection of the poles and the stringing of wires by the defendant in any of the streets or places in the village. The action is not brought to enforce regulations or rules made by the local legislative body for the protection of the rights of the village or its inhabitants in respect to the location of the poles and wires of the defendant, but to compel the defendant to conform in the extension of its telephone system to the resolutions of the plaintiff's board of trustees requiring that the defendant maintain its exchange in said village by means of conduits under the streets.

The court below held that, when the village assumed to require one telephone company to place its wires underground in the same streets in which another is permitted to use poles and open air construction, it does an act which cannot be justified, even assuming that the matter is within its jurisdiction, and placed the decision upon that ground.

We concur in the opinion of the court below, placing the decision upon that ground, but prefer to dispose of the matter upon the question of right rather than upon that of an illegal discrimination.

The order should be affirmed.

McLENNAN, P. J., concurs.