(23 App. Div. 78.)

WOODSIDE WATER CO. v. CITY OF LONG ISLAND CITY.

(Supreme Court, Appellate Division, Second Department. December 14, 1897.)

1. MUNICIPAL WATER BOARDS—CONTRACTS—ULTRA VIRES.

Under Laws 1890, c. 194, limiting the annual expense of the water department of Long Island City, exclusive of fuel and necessary repairs, to $24,000, and providing that the board of water commissioners should not, without the consent of the common council, make any contract over $1,000 for the extension or repair of the waterworks, etc., a contract made by such board with plaintiff, providing that the latter should lay and maintain water pipes and hydrants in certain streets, and furnish water to the inhabitants and to the city for public purposes, and a later contract, providing that plaintiff should supply water to the mains and pipes of the city for

distribution and use by it, under which contracts plaintiff furnished to the city over $46,000 worth of water, in eight months, are ultra vires, and illegal.

2. STATUTES—IMPLIED REPEAL—GENERAL AND SPECIAL LAWS.
Laws 1890, c. 566, § 81, as amended by Laws 1892, c. 617, which is a general statute authorizing water commissioners to contract for the delivery of water to the city for extinguishment of fires, and for sanitary and other public purposes, is neither inconsistent with nor repugnant to, and hence does not repeal, Laws 1890, c. 194, which limits the annual expenses of the water department of Long Island City to $24,000, and limits the power of its board of water commissioners, without the consent of the common council, to contracts not over $1,000 for the extension and repair of its waterworks.

3. MUNICIPAL WATER BOARDS—CONTRACTS—ULTRA VIRES.
Laws 1890, c. 566, § 81, as amended by Laws 1892, c. 617, authorizing water commissioners to contract for the furnishing of water to the city for public purposes, does not authorize a contract for the furnishing of water directly to the inhabitants through the private pipes of the company.

Appeal from special term.

Action by the Woodside Water Company against Long Island City. From a judgment entered upon an order dismissing the complaint, plaintiff appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

F. H. Van Vechten, for appellant.
Thomas P. Burke, for respondent.

GOODRICH, P. J.　The plaintiff is incorporated as a water-supply company, under the transportation corporations act (2 Rev. St. [9th Ed.] p. 1340), having its principal place of business at Newtown, Long Island.　The defendant is a municipal corporation under special charter (chapter 461, Laws 1871), by which the mayor, city judge, commissioner of public works, and two citizens to be appointed by the mayor, were appointed water commissioners of the city.　The board of commissioners was authorized to supply the city with water, and for this purpose, by proper proceedings, to take real estate, enter upon lands, and take water, and conduct the same to the city, to construct and lay aqueducts, pipes, etc., for the purpose aforesaid.　It was required to keep an account of its expenses in extending the pipes, and report the same to the common council.　Title 10, § 9. There were other provisions which show clearly that the intention of the charter was that the board should regulate the rate of charges for water, assess, and collect the same, and be itself the distributing source of water to the inhabitants.　In 1879 an act was passed (Laws 1879, c. 100), section 1 of which provided that in each year the heads of departments should submit written estimates in detail of the amounts required for the purposes of their respective departments during the ensuing year, and that the expenses of the several departments should in no year exceed the amount appropriated therefor, without the consent of all the members of the common council. In 1890 it was further provided (Laws 1890, c. 194) that the expenses of the water department, exclusive of the cost of fuel and necessary repairs, should not exceed $24,000 in any one year, and that the

board should not, without the consent of the common council, enter into any contract for the extension or repair of the waterworks, etc., which should involve an expenditure in excess of $1,000.

It is evident that the scheme of the charter and the act of 1890 was that the action of the board should be subject to the consent of the common council as to contracts involving greater expense than that already stated, and that such contracts should be made only in connection with, and upon the approval of, the common council. The board, however, on April 20, 1896, and on November 12, 1896, without any consent of the common council, made two contracts with the plaintiff, the full details of which are not set out in the complaint; but the contracts, by consent of counsel, were presented to this court on the argument of this appeal. The first contract provided that the plaintiff should lay and maintain at its own expense water pipes and hydrants in such streets not already occupied by the defendant's water pipes as should be designated by the board, for the purpose of furnishing through them water to any of the inhabitants along such lines who should require the same, upon their paying to the plaintiff such charges or compensation as the board might fix, not exceeding the charges for similar supplies made by the city to inhabitants along the lines of its own pipes. The company was also to erect hydrants and furnish water to the city for fire and sanitary purposes, and pay to the city 2 per cent. on the net profits of the company realized from the delivery of water by said company directly to the inhabitants. The second contract provided that the plaintiff should furnish water to the mains and pipes of the defendant for delivery by the city to inhabitants, and for fire, sanitary, and other public purposes, as might be required by the city. Intermediate the two contracts, the company, in reliance upon the first contract, expended $69,000 to enable it to comply with the obligations of such contract. At the time of these contracts chapter 194 of the Laws of 1890 contained the following provision:

"The expenses of the water department of said city, exclusive of the cost of fuel and necessary repairs, shall not exceed twenty-four thousand dollars in any year. The board of water commissioners of said city shall not, without the consent of the common council, enter into any contract for the extension or repair of the water-works, machinery or property, or any part thereof, which shall involve an expenditure in excess of the sum of one thousand dollars; and said commissioners shall present to the common council of said city a formal report in detail of their administration of the affairs of the water department on the first days of January and July, respectively in each year."

It was the evident purpose of these several acts that the water department should be a branch of the city government, and to a certain extent amenable to the common council, and that it should not make any contracts involving increased expenditure above the amounts above specified, without the consent of the common council. Whether the contracts are or are not within the letter of the statute as expressed by the use of the words "extension or repair of the waterworks," they are certainly within its spirit, which contemplates a limitation of all the annual expenses of the department, exclusive of fuel and repairs, to $24,000, and forbids any contract over $1,000

for extension or repair, without the consent of the common council. The contracts necessarily relate either to the expense of the department or to an extension of the works. If the former, the statute prohibits an expenditure over $24,000, and, if the latter, the consent of the common council is requisite; so that, in either view, the contract was ultra vires of the department, and illegal. The findings show that the amount of water intended to be furnished, and which was furnished, to the city itself between May 1, 1896, and January, 1897, amounted to over $46,000.

But the appellant contends that section 81 of the transportation act, above cited, authorizes the execution of these contracts. It provides that "water commissioners   *   *   *   shall have the power to contract in the name and behalf of the municipal corporation   *   *   * for the delivery by such company to the   *   *   *   city of water through hydrants or otherwise, for the extinguishment of fires, and for sanitary and other public purposes," the expense thereof to be levied and collected in the same manner as other expenses of the city. The question arises whether this general statute repeals by . implication the provisions of the city charter. It is authoritatively settled that general acts are ordinarily held not to repeal the provisions of charters granted to municipal corporations or special acts passed for their benefit, though conflicting with the general provision. In McKenna v. Edmundstone, 91 N. Y. 233, Andrews, J., said:

"It is well settled that a special and local statute, providing for a particular case or class of cases, is not repealed by a subsequent statute, general in its terms, provisions, and application, unless the intent to repeal or alter is manifest, although the terms of the general act are broad enough to include the cases embraced in the special law. In re Commissioners of Central Park, 50 N. Y 493. This is but the application of the larger rule that a statute is not deemed repealed by implication by a subsequent act upon the same subject, unless the two are manifestly inconsistent with and repugnant to each other, or unless a clear intention is disclosed on the face of the later statute to repeal the former one."

The transportation act is neither inconsistent with nor repugnant to the provisions of chapter 194, Laws 1890, already cited, nor is any intent to repeal or alter the latter manifest or clearly discoverable on the face of the transportation act. If needful, it might be added that the latter suggestion derives additional force from the fact that the act containing the limitation is entitled "An act relating to, and to reduce the expenses of, the city government of Long Island City," and was passed in 1890 by the legislature of the same year which passed the original transportation act (see chapter 566, Laws 1890), although the eighty-first section of the original act related to towns and villages only, and not to cities, and was extended to cities by chapter 617 of the Laws of 1892. It would be a violent legal presumption, whatever it might be as matter of fact, to assume that the legislature did not have in mind its previous enactment of the same session, and intended to repeal the former act, when it was not referred to in the subsequent statute. It may also be said that the eighty-first section of the transportation act provides for the furnishing of water to a city only for public purposes, and for the expense

thereof to be levied and collected by the city, and does not authorize
a contract such as the one of April 20th, which provides for the fur-
nishing of water, not to the city, but through the private pipes of the
company to inhabitants along the route of such pipes, upon payment
of water rates by such inhabitants directly to the company.

We are therefore fully in accord with the opinion of the learned
justice at special term that the transportation act does not remove
the checks upon the water commissioners, as provided in chapter
194 of the Laws of 1890, and it follows that the judgment must be
affirmed.　All concur, except BARTLETT, J., who concurs in the
result.