STATEN ISLAND WATER SUPPLY CO. v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department.  April 21, 1911.)

1. WATERS AND WATER COURSES (§ 200*)—MUNICIPAL WATER SUPPLY—STATUTES—APPLICATION.

Greater New York Charter, § 471, as revised in 1901 (Laws 1901, c. 466), provided that water commissioners should not contract for water for private or public consumption without the assent of the board of estimate and apportionment and the separate written approval of the mayor and comptroller of New York of the proposed contract, given by resolution, and that it should not be lawful for the city or any department therein to make any contract concerning the public water supply, except in accordance with such requirements. *Held*, that such section had no application to a situation where, in the absence of a

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"public water supply," the city takes water from a private company, which the latter is required to furnish by Transportation Corporations Law (Consol. Laws, 1909, c. 63) § 81; and hence the city was liable for the reasonable value of water so furnished for the city's public buildings, stables, parks, sprinkling streets, etc., and for the use of fire hydrants maintained by such company for the city's benefit, though no contract had been made in accordance with the charter.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 274; Dec. Dig. § 200.*]

2. MUNICIPAL CORPORATIONS (§ 227*)—STATUTES—CONSTRUCTION.

General words of a statute regulating municipal contracts are to be restrained in their application to the subject-matter in reference to which they are employed.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 644; Dec. Dig. § 227.*]

Appeal from Trial Term, Richmond County.

Action by the Staten Island Water Supply Company against the City of New York. From a judgment dismissing the complaint, plaintiff appeals. Reversed, and new trial granted.

Argued before JENKS, P. J., and HIRSCHBERG, THOMAS, CARR, and RICH, JJ.

T. Ludlow Chrystie, for appellant.

Clarence L. Barber (Theodore Connoly, on the brief), for respondent.

CARR, J.   The plaintiff sued the defendant to recover the sum of $73,380.88, with interest. In its complaint it tried to set forth three separate causes of action. The defendant answered, with denials generally, and set up several affirmative defenses. When the action came on for trial, the defendant moved to dismiss the complaint, on the ground that it failed to state a cause of action. The motion was granted, and judgment was entered accordingly; and from this judgment the plaintiff appeals.

[1] It appears in the complaint that the plaintiff is a waterworks company, organized under the laws of this state for the purpose of supplying water for public and private use in a locality which now comprises the First and Third wards of the borough of Richmond of the city of New York, and which prior to January 1, 1898, embraced the villages of New Brighton and Port Richmond and the town of Northfield in the county of Richmond. The plaintiff had carried on its business of public and private water supply in the territory above described for 25 years prior to 1909. For the purpose of stating and analyzing more clearly the question of law which gives rise to the controversy between the parties, the second separate cause of action set forth in the complaint will be taken up for consideration first. ·

Briefly stated, it is alleged in this cause of action that the defendant maintained in the borough of Richmond a public building known as the "Borough Hall"; that the only source of water supply for that building was that obtainable from the water mains of the plaintiff, laid pursuant to law in that locality; that the defendant tapped the plaintiff's water mains, and connected the plumbing of the Borough

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Hall building therewith, and used the water therefrom for lavatory and sanitary uses in the Borough Hall from July 1, 1906, to February 16, 1909; that the reasonable value of the water so used was at the rate of 15 cents for 100 cubic feet; that the plaintiff has presented bills for the water so used, amounting to $8,517.20, and filed a claim therefor, as provided by statute, and the defendant has refused to pay the same or any part thereof. The defendant justifies its refusal to pay on the ground that there was not between the plaintiff and the defendant, during the period of the defendant's use of the plaintiff's water, any contract entered into according to the requirements of section 471 of the Greater New York charter, as revised in 1901, and as in force during the period in question. That section provides as follows:

"It shall not be lawful for the commissioner of water supply, gas and electricity to enter into any contract whatever with any person or corporation engaged in the business of supplying or selling water for private or public use and consumption, unless, preliminary to the execution of the contract, the assent of the board of estimate and apportionment, together with the separate written consent and approval of both the mayor and the comptroller of the city of New York of the proposed contract in all its details, shall be given by resolution to the execution of such contract as submitted, and it shall not be lawful for the said city of New York or for any department thereof, to make any contract touching or concerning the public water supply, and especially the increase thereof, with any person or corporation whatsoever, save in accordance with the provisions and requirements of this act, which said provisions and requirements are hereby declared to establish the exclusive rule for the making of such contracts. All proceedings relating to the making or approval of any such contract may be reviewed by the Appellate Division of the Supreme Court in the First or Second Department on the application of any resident taxpayer."

The section just set forth is but a re-enactment, with the omission of a few words, of chapter 283 of the Laws of 1900, which amended section 471 of the Greater New York charter as originally enacted in chapter 378 of the Laws of 1897. As this section stood in the original charter of 1897, the power of the commissioner of water supply of the city of New York "to enter into any contract whatever with any person or corporation engaged in the business of supplying or selling water for private or public use" was made subject to the assent "of the board of public improvements." The amendment of 1900 added to the boards or officers whose assent was necessary the board of estimate and apportionment and the mayor and the comptroller of the city, acting separately. The "board of public improvements" was abolished by the revised charter of 1901, and the reference to said body was then omitted. The language of the section in its main aspects, except as to the boards or officers whose assent was required, has been practically the same from 1897, except that by the amendment of 1900 there was added a final clause, as follows:

"All proceedings relating to the making or approval of any such contract may be reviewed by the Appellate Division of the Supreme Court in the First or Second Department, on the application of any resident taxpayer."

The inclusion of this latter clause, quite extraordinary in its nature, is very suggestive of the history of the amendment of 1900 and the legislative intent sought to be carried out. A proposition had been

brought before the board of public improvements of the city of New York to enter into a contract for a long term of years with a private corporation known as the Ramapo Water Company for an increase of the water supply of the city of New York, which would entail upon the city obligations of more than $100,000,000. This led to much public agitation, with the result that in 1900 section 471 was so amended as to increase the number of public boards whose assent was required to any such contract, and to confer upon the mayor and the comptroller, separately, a practical veto power, followed with an attempt to cast upon the Appellate Division of the Supreme Court in the First or Second Departments a power of review of what would be essentially an administrative question.

Without imputing to the Legislature an intent, full of impracticability and verging on absurdity, literally "breaking a butterfly upon a wheel," it cannot be held that section 471 applies to and controls the situation set forth in the second cause of action in this complaint. This situation discloses a water supply company with water mains in a public street, abutting which the city maintains a public building for the proper use of which water is necessary. The plaintiff had the statutory duty of supplying any householder with water for premises adjoining its mains. Any householder had the statutory right to be so supplied, provided he was willing to pay a reasonable compensation therefor. The city had no water of its own for its Borough Hall, and it stood in relation to the plaintiff in the same position as any householder. It could compel the supply, but only on the same conditions. If it chose to avail itself of the convenience offered by the plaintiff, it assumed the duty of compensation, which necessarily attended the plaintiff's statutory duty of supply. It never could have been intended by the Legislature that the city's right to get this water for its Borough Hall, and its duty to pay for it when it got it, was to be circumscribed by the formality of a written contract entered into with the solemn assent of the board of estimate, subject to the veto power of both mayor and comptroller, separately, and finally subject to review in the Appellate Division of the Supreme Court. It is true that section 471 declares expressly that:

"It shall not be lawful for the said city of New York, or for any department thereof, to make any contract touching or concerning the public water supply, and especially the increase thereof, with any person or corporation whatsoever, save in accordance with the provisions and requirements of this act, which said provisions and requirements are hereby declared to establish the exclusive rule for the making of such contracts."

This very general language relates to contracts "touching or concerning the public water supply," and it can be given ample scope without attempting to apply it to a case where, in the absence of "the public water supply," the city takes from a private water company a supply to which it has a statutory right, for use in a building which it owns and maintains in a proprietary character. The contract which the law would otherwise imply under such circumstances is not, in the true meaning and application of this statute, a "contract touching or concerning the public water supply" of the city of New York.

[2] It is a general rule of statutory construction, frequently applied to contracts of municipal corporations when viewed with relation to the provisions of municipal charters, that "general words are to be restrained in their application to the subject-matter in reference to which they are employed." Harlem Gas Co. v. Mayor, etc., 33 N. Y. 309; Baird v. Mayor, etc., 96 N. Y. 567, 582, 583; Port Jervis Water Co. v. Village of Port Jervis, 151 N. Y. 111, 45 N. E. 388; North River Electric Co. v. City of New York, 48 App. Div. 14, 62 N. Y. Supp. 726.

We conclude, therefore, that the facts set forth in the second separate cause of action of the complaint herein state a good cause of action against the defendant.

The same reasoning applies to the third separate cause of action set up in the complaint for water taken by the city, under similar circumstances, for "sprinkling its streets," and for use in its "crematories, stable, park, police station, municipal property known as Griffith House," etc., and we are likewise of opinion that a good cause of action is set forth therein.

We are brought now to a consideration of the facts set forth in the first separate cause of action of the complaint, which we have reserved for final consideration, as possibly a different question of law may arise therefrom. In this first cause of action, the plaintiff seeks to recover for the reasonable value of the use by the defendant of some hundreds of fire hydrants owned by the plaintiff and maintained in a territory of the city of New York in which the city maintained no "public water supply," and in which no other source of water supply existed other than that maintained by the plaintiff. Prior to January 1, 1898, the plaintiff for many years maintained the greater part of the fire hydrants in question under formal written contracts with the various villages and towns within the territory of its operations, by which contracts the compensation to be paid for said hydrants was fixed. The contracts were generally for the term of five years, and all of them were renewed in the year 1897 for terms of five years. On January 1, 1898, all of these villages and towns were consolidated with the city of New York. After said consolidation, the contracts continued to run until their expiration in 1902. From time to time additional fire hydrants were furnished under orders from the city of New York. After the expiration of the formal contracts in 1902, no formal contract was entered into between the plaintiff and defendant relative to the compensation to be paid to the plaintiff for the use by the defendant of the hydrants; but the use continued as theretofore. The defendant paid the plaintiff various sums of money on account for the use of these fire hydrants at the rate of $25 a year for each hydrant to December 31, 1905. It continued to use them until February, 1909, when it bought out the plaintiff's plant, but has refused to make any payments for such use, other than the amounts paid, as above stated, up to December 31, 1905. It denies liability to the plaintiff for the reasonable value of the use of said hydrants on the same ground assigned in answer to the second and third separate causes of action, viz., that there was no contract entered into between it and the plain-

tiff relative to the use of said hydrants under the provisions of section 471 of the Greater New York charter.

It seems to us that here again arises the same question of the applicability of section 471 of the charter to the situation above outlined. By section 81 of the transportation corporations law a statutory duty was cast upon the plaintiff to furnish water to the authorities of any city through which its mains or conduits may pass. The defendant had a statutory right to the performance of such duty by the plaintiff to the extent of furnishing such a number of fire hydrants as the needs of public safety might require within the limits of the plaintiff's capacity. Such right on the part of the defendant was burdened with a corresponding duty to pay the reasonable value of the service. The relations of the parties were not purely contractual, as the duty of performance on the part of the plaintiff arose not simply from its consent, but was imposed upon it by positive provisions of law. It could not refuse its fire hydrant service to the defendant, except upon its own terms. In this respect its position seems radically different from that of persons who were free to furnish or withhold goods or services, and to whom apply the long-established rule that persons attempting to contract with municipal corporations do so at the peril of observing all the statutory requirements imposed upon municipal corporations in relation to contracts for goods or services. The plaintiff could not cut off its fire hydrant service until a contract for a definite term at a definite rate of compensation was entered into between it and the defendant with all the assents and formalities provided by section 471 of the charter as aforesaid.

In the absence of such a contract, the statute fixed the rights and duties of both parties. Here, again, we deem the provisions of section 471 inapplicable to the facts set forth in the first separate cause of action. Nor do we think that this conclusion in any way impairs the legislative intent expressed in the general language of that section of the charter. The contract under which the plaintiff seeks to recover is not one made in violation of the statute, but one implied by statute from the performance of an obligation required by statute. All statutes relating to a general subject-matter must be construed together, and, no matter how general the language used, the intent of the Legislature must be sought to avoid as far as practicable false consequences and palpable injustices. People ex rel. v. Commissioners of Taxes, etc., 95 N. Y. 554, 558.

We are of opinion, therefore, that the facts alleged in the first separate cause of action in the complaint state a good cause of action.

It follows that the judgment should be reversed, and a new trial granted; costs to abide the event. All concur.