·(164 App. Div. 163)

### PEOPLE ex rel. URBAN WATER SUPPLY CO. v. CONNOLLY, Borough President.

(Supreme Court, Appellate Division, Second Department.　November 6, 1914.)

1. STATUTES (§ 191*)—CONSTRUCTION—ASCERTAINING INTENT—USE OF GENERAL LANGUAGE.

　　While there is no room for construction where the language of a statute is plain, the use of general language, however sweeping, does not oust the courts from their power and duty of construction and interpretation to ascertain and apply the legislative intent, and such general language must yield to the necessary particular application.

　　[Ed. Note.—For other cases, see Statutes, Dec. Dig. § 191.*]

2. WATERS AND WATER COURSES (§ 188*)—WATER COMPANIES—FRANCHISES—ACQUISITION.

　　Under Transportation Corporations Law (Consol. Laws, c. 63) § 80, providing for the incorporation of water supply companies with the consent of a majority of the trustees of the village or of the officers of the town to be supplied with water, section 81, requiring every such corporation to supply the authorities or inhabitants of any city, town, or village through which their mains pass or wherein they may have organized, with water at reasonable rates, and section 85, providing that, when any such corporation has entered into a contract with the authorities of any city, town, or village not mentioned in its certificate of incorporation to supply it with water, it may file an amended certificate, stating the name of such city, town, or village, and may thereupon supply it with water with the same rights and subject to the same requirements as if it had been named in the original certificate of incorporation, the contract, which will entitle such a company to the same rights in the city, town, or village contracted with as in its original territory must be one requiring it to perform within such city, town, or village the powers and duties conferred upon it by section 81 in the locality in which it was incorporated, and a contract of such a corporation to supply water to the city of New York in gross for delivery by such city through its own pipes to itself or its inhabitants gave it no franchise power or duty within such city, and did not entitle it to lay its mains and conduct a system of water supply in such city upon the termination of such contract by the city, especially where the procedure prescribed in Greater New York Charter (Laws 1901, c. 466) § 73 et seq., regarding the granting of franchises, was not resorted to.

　　[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 287, 288; Dec. Dig. § 188.*]

3. MANDAMUS (§ 159*)—ALTERNATIVE WRIT—NECESSITY.

　　Where, on an application for a writ of mandamus, there was no controversy as to the essential facts, there was no necessity for granting an alternative writ.

　　[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 324, 325; Dec. Dig. § 159.*]

4. APPEAL AND ERROR (§ 87*)—ORDERS APPEALABLE—ORDER DENYING REARGUMENT.

　　An order of the Special Term denying the relator's motion for a reargument of a motion for a writ of mandamus was not appealable, and an appeal therefrom will be dismissed.

　　[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 559–569, 577–596; Dec. Dig. § 87.*]

Appeal from Special Term, Queens County.

Mandamus by the People, on the relation of the Urban Water Supply Company, against Maurice E. Connolly, as President of the Bor-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ough of Queens. From an order denying its motion for a peremptory writ of mandamus (149 N. Y. Supp. 563), and from an order denying its motion for leave to renew the application for such writ, the relator appeals. Order denying writ of mandamus affirmed. Appeal from order denying motion for reargument dismissed.

Argued before JENKS, P. J., and BURR, THOMAS, CARR, and STAPLETON, JJ.

Augustus Van Wyck, of New York City (Clarence J. Shearn, of New York City, on the brief), for appellant.

William E. C. Mayer, of New York City (Terence Farley and Edward S. Malone, both of New York City, on the brief), for respondent.

CARR, J. The relator is a water supply company, incorporated under section 80 of the Transportation Corporations Law, to furnish for public and private use a water supply in the town of North Hempstead, Nassau county. It was incorporated in 1906. In 1907, under the appropriate statutory requirements, it acquired a source of water supply in the adjoining county of Queens, in the Second ward of the borough of Queens, formerly the old town of Newtown. In 1911, it entered into a contract with the city of New York to furnish water, to be delivered into the mains of the city of New York, in the First ward of the borough of Queens, formerly the old municipal corporation of Long Island City. Under this contract, it was to deliver for a fixed price at least 1,000,000 gallons of water a day to the city of New York, in the neighborhood of a pumping station of said city to be designated by the commissioner. This contract was to run for one year, with an option on the part of the city of New York to require continuous performance for a period of two or three years. The point at which it was selected to deliver the water into the mains of the city of New York was well within the boundaries of the First ward of the borough of Queens; and under its contract the relator laid a delivery main to the designated point, and thereafter supplied the water for a considerable period of time. Subsequently the city of New York constructed a delivery main into the First ward of the borough of Queens from the borough of Brooklyn, and thereupon terminated its contract with the relator.

After the contract between the relator and the city of New York had been made, the relator filed in the office of the secretary of state an amended certificate of incorporation, setting forth the contract between it and the city of New York, and including the city of New York as a part of the territory in which it was thereafter to exercise its corporate functions. By reason of said contract, and the amended certificate of incorporation, it claims that it has now the corporate power and duty of maintaining a public water supply within the First ward of the borough of Queens, and, in fact, all the territory of the city of New York. Prior to entering into the contract in question, it purchased at a foreclosure sale the tangible property and franchise rights of a corporation known as the Woodside Water Company. This latter corporation had been organized to carry on the business of supplying water in the old town of Newtown, now the Second ward of

the borough of Queens. So far as the papers before us disclose, the Woodside Water Company never acquired any franchise right of furnishing water within Long Island City, now the First ward of the borough of Queens.

On the argument of this appeal, both orally and in the briefs, some recriminations are indulged in between the respective counsel as to certain statements made in the moving papers in regard to the real or supposed rights of the Woodside Water Company. The relator concedes now that it does not rest, for the relief which it seeks in this proceeding, upon any claim of right in the Woodside Water Company outside of the territory in the town of Newtown, now the Second ward of the borough of Queens. We think this concession is made properly (Woodside Water Co. v. Long Island City, 23 App. Div. 78, 48 N. Y. Supp. 686; Id., 159 N. Y. 558, 54 N. E. 1095), and we shall consider any reference in the motion papers as to the supposed rights of the Woodside Water Company as made without any intention to mislead or confuse, but simply as illustrative, so far as it may be so.

Section 80 of the Transportation Corporations Law defines the circumstances under which a water supply company may be incorporated. If its field of operation is to be within an incorporated village, then the written consent of a majority of the trustees of said village is required for such incorporation. If, however, its scope of activity lies within a town, not including an incorporated village, then written consent of a majority of the town officers, therein enumerated specifically, is required. Section 81 of that statute defines the powers and duties of a water supply company incorporated according to its provisions. By section 85 thereof it is provided as follows:

"Corporation may Contract with Other Cities, Towns or Villages; Amended Certificate.—When any such corporation has entered into a contract with the authorities of any city, town or village not mentioned in its certificate of incorporation, but situated in the same county as the city, towns, or villages mentioned therein or an adjoining county, to supply it with pure and wholesome water, it may file an amended certificate stating the name of such other city, town or village to be so supplied with water, and it may thereupon supply any such city, town or village with water in the same manner and with the same rights and subject to the same requirements as if it had been named in the original certificate of incorporation."

[1] By a mere inspection of this last statutory provision, it is apparent that the language used therein is very general in its terms. The words of the statute are "a contract"; but it is not contended by the appellant that these words, general as they are, embrace every kind of a contract for water supply that might be entered into. It is true enough that, where the language of a statute is plain, there is no room for construction by the courts; but it is well recognized that the use of general language, however sweeping, does not oust the courts from their power and duty of construction and interpretation to ascertain and apply the legislative intent. General words must yield to the necessary particular application. People ex rel. Braeburn Ass'n v. Hanking, 154 App. Div. 679, 139 N. Y. Supp. 436, affirmed on opinion below 207 N. Y. 761, 101 N. E. 1116; Staten Island Water

Supply Co. v. City of New York, 144 App. Div. 318, 128 N. Y. Supp. 1028.

[2] We think that it is quite plain that the contract referred to in section 85 of the statute must be substantial in its nature—one that requires the water supply company to perform within the territory of the contracting municipality the powers and duties conferred upon it by section 81 of the statute, in the locality in which it was incorporated under section 80. We think it is not to be supposed that, under the provisions of section 85 of the statute, the Legislature intended that a corporation entering into a contract therein specified could base its right to an amended certificate of incorporation upon a contract which did not, as far as was concerned the locality, place the water supply corporation in precisely the same legal situation as it held in the territory of its original incorporation.

This brings us at once to a consideration of the actual terms of the contract entered into between the relator and the city of New York in 1911. This contract is set up in the motion papers. It appears that the city of New York, in the exercise of the powers and in obedience to the duties imposed upon it by statute, maintained a water supply system in the First ward of the borough of Queens. Through this system of water mains, it supplied the inhabitants of that locality. Deeming that its physical supply of water was insufficient, it entered into a contract with the relator to deliver into the mains of the city of New York, at a specified point, a minimum quantity of water. After its delivery into said mains, then the city of New York furnished said water to the inhabitants of the affected locality on its own account. The contract in question was not one that enabled the relator to carry on the business of a water supply corporation within the new locality, dealing directly with its consumers, but it was rather one that obliged it to furnish to the city of New York in gross, as a commodity, water, which the city of New York thereafter and in its own right disposed of, either to its inhabitants or to itself, as the situation might require. Thus it is our opinion that the contract now before us was not the kind of a contract contemplated by section 85 of the statute, and its existence gave to the relator no legal right to claim a franchise power and duty over the territory of the city of New York.

We feel that this view of the matter, apart from our construction of the water supply statute, is made very strong indeed by a reference to the existing statute affecting the city of New York. The contract of the relator with the city was made under the provisions of section 471 of the Greater New York Charter. On the part of the city it was entered into by the commissioner of water supply, but to give it legal effect its terms had to be approved by the public bodies of the city therein enumerated. It is true that the board of estimate and apportionment of the city of New York, whose consent was required by the provisions of that section of the charter, had power to grant a franchise right to the relator in the streets of the city of New York; but that power did not come from section 471 of the Greater New York Charter, but, on the contrary, from section 73 of said charter.

That statute sets off the city of New York, apart from the rest of the state, as a locality in which special circumstances were deemed to exist in regard to the granting of public franchises. It provided for no franchise in the streets of said city for a term longer than 25 years, and it required that the public bodies granting the franchise should determine whether the property of the party receiving the franchise, and which should grow out thereof, should revert to the city of New York at the expiration of the franchise, either absolutely or for a compensation to be fixed by the terms of the franchise.

In entering into the contract with the relator, the procedure required by section 73 and the following sections was not resorted to, and it seems to us apparent that the board of estimate and apportionment of the city of New York did not consider that it was attempting to grant a franchise to the relator when it made a temporary contract for the purchase of a commodity at a fixed price, of which the city of New York was to dispose to its inhabitants under circumstances and conditions in which the relator had no interest and over which it had no possible control. The terms of the contract expressly precluded an "exclusive franchise" in the relator under the contract, and in our judgment it in no way created any franchise right in the relator to lay its mains and to conduct a system of water supply within the territory of the First ward of the borough of Queens, or any other portion of the city of New York, other than that of the Second ward of the borough of Queens, formerly the old town of Newtown, in which it had certain rights acquired by purchase under foreclosure sale of the property and franchise rights of the Woodside Water Company. Hence we think the relator failed to show any legal right for a mandamus against the borough president of Queens to issue permits to it to use the public highways of that borough, outside the Second ward thereof, for the purpose of laying and maintaining its water mains.

We are referred by the appellant to an opinion of the late Justice Wilmot Smith, in a litigation affecting the rights of the Woodside Water Company to enter into Long Island City for the purposes of a water supply corporation. We have the utmost respect for the memory of Mr. Justice Smith, than whom there was no more amiable justice of this court, and few, if any, better qualified from a juristic aspect. We have only to say that the opinion in question, so far as is concerned the precise question now before us on appeal, is purely obiter. We have not before us in the motion papers the nature and extent of the contract between the Woodside Water Company and Long Island City, which was in the consideration of the learned justice when he expressed his opinion. Some idea of the nature of that contract can be gathered from the report of the decision of this court in Woodside Water Co. v. Long Island City, ut supra, and it is markedly different in its purpose and scope from the one now before us. However, we will confine ourselves entirely to the papers before us in the record on appeal. It is quite true, as was argued on this appeal by the learned counsel for the appellant, that this relator is not to be burdened with any evil conduct in the past history of the Wood-

side Water Company. It is equally as true that it has now no more rights as the successor of the Woodside Water Company under the foreclosure sale than if that corporation was now seeking the relief in this proceeding which the relator asks as a right, to lay water mains in the territory of the city of New York outside the Second ward of the borough of Queens.

[3, 4] So far as the essential facts are concerned, there is no controversy whatever, and there was therefore no necessity of an order granting an alternative writ of mandamus. We think that the order of the Special Term, made after a careful examination of the questions involved, as appears from its opinion denying a writ of mandamus, should be affirmed. There is now brought up also an appeal from an order made at Special Term, denying the relator's motion for a reargument of its motion below. The appeal from the latter order must be dismissed, as the order in question was not appealable to this court.

The order denying the motion for a writ of mandamus is affirmed, with $10 costs and disbursements, as a matter of law. The appeal from the order denying the relator's motion for a reargument is dismissed, with $10 costs. All concur.