WATERLOO WATER COMPANY, Appellant, *v.* VILLAGE OF WATERLOO, Respondent.

Fourth Department, March 15, 1922.

**Water companies — action by water company to recover for use of water by village — franchise fixed maximum rate for thirty years — no contract between parties fixing rate — rate in franchise not binding — company entitled to reasonable rate — franchises — village could not grant exclusive franchise — provision of statute as to reasonable rates by implication became part of contract between parties — franchise defined — thirty-year contract fixing rates subject to modification through police power of State — Legislature has not attempted to fix water rates — rates must be reasonable — court will determine what is reasonable rate.**

The plaintiff water company was incorporated in 1886 and, after serving the defendant village under contract arrangements for several years, was, on May 15, 1913, granted a so-called franchise by the defendant. The franchise

authorized plaintiff to maintain its system and furnish water to the village, fixed a maximum rate for service during a term, later fixed at thirty years, granted plaintiff the exclusive use of the streets as far as necessary for its purposes and specifically reserved all rights of plaintiff under a former so-called franchise and under the laws of the State of New York.  Thereafter, the parties made a contract for five years for hydrant rental at the maximum rate named in the franchise.  This contract expired July 1, 1919, and a new contract was not made but the defendant continued using the hydrants and insisted that plaintiff should be paid no more than such contract rate, regardless of the cost of furnishing the water.

In an action to recover for six months' use of the hydrants, *held*, that the franchise rate was not binding and that plaintiff was entitled to recover a reasonable rate for the hydrant rentals.

As to the rate, the franchise constituted no contract between the parties for it was without consideration as it conferred no rights on the company which it did not already possess.  Moreover, rate making being a function of the Legislature, the village had no power to establish rates for a term exceeding the five years provided by statute.

The fact that the franchise was exclusive does not give it validity as the village could not legally grant an exclusive franchise.

The statute in effect when the company was incorporated authorized water corporations to supply a village " at reasonable rates and cost to all consumers who may use the same," and such statutory provision entered by implication into any contractual relation between the parties.

*It seems*, that a franchise is a special privilege conferred by government on individuals or corporations, which does not belong to the citizens of a country generally by common right.

*It seems*, that if the thirty-year franchise were considered a contract with a fixed maximum rate, it would not be beyond the inherent police power in the Legislature to modify it for the public welfare.

*It seems*, that the Legislature has not undertaken to regulate water rates.  It has simply said that such rates must be fair to both corporation and user.  When the parties cannot agree and there is no other tribunal provided, the court will determine what is a reasonable rate.

APPEAL by the plaintiff, Waterloo Water Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Seneca on the 27th day of October, 1921, upon the decision of the court rendered after a trial at the Monroe Special Term, a jury having been waived.

*Daniel Moran*, for the appellant.

*Bacon & Huff* [*W. Smith O'Brien* of counsel], for the respondent.

DAVIS, J.:

The plaintiff having furnished water to defendant through its hydrants for six months without prior agreement as to rate, sought in this action to recover the reasonable value of the hydrant rental. The defendant on the trial established its claim that the recovery must be limited by the maximum rate in a " franchise."

To present clearly the issue, it is necessary to state the facts more fully.  Having received permission from the trustees of

defendant village to organize as a water works company as required by statute (Laws of 1873, chap. 737), the plaintiff was incorporated in 1886. It constructed its plant that year.

The company then asked the village trustees to adopt an ordinance granting it an exclusive privilege of maintaining and operating a water works in the village. This ordinance was not adopted. Later a contract for one year was agreed upon between the parties, silent on granted rights, but providing a rate for hydrants and making definite rules for repairs of streets " disturbed by digging or otherwise for the purposes of the said company," and containing other regulatory provisions. This contract, in substantially the same form, was renewed from time to time, for periods of from one year to five years.

For some time prior to 1913 the plaintiff's business evidently was not profitable. It had defaulted in payment of interest on its bonds, and was taken over by a new management. It required new financing to make substantial improvements, including a new filter and increased fire pressure for the benefit of the village and its inhabitants. The company was desirous of obtaining a franchise or renewing one it thought had been granted long before. A " franchise " was granted by the village trustees on May 15, 1913, which authorized the company " to maintain and extend its plant and water system for furnishing water to said village and the inhabitants therein, to maintain and operate its mains, hydrants, etc., through the public streets of said village." It fixed a maximum annual rate for hydrant rental, and rates for individual consumers during the term subsequently fixed at thirty years. It provided for extensions upon request of the village trustees; and contained a grant of the " exclusive right to the streets of said village so far as their use for the public or general supply of water is concerned during the period of this franchise." It regulated the depth of mains and the manner of making repairs to the streets. At the instance of the company this clause was inserted: " The acceptance of this franchise shall not be construed as abridging or waiving on the part of the water company such rights as it has under the former franchise and under the laws of the State of New York."

Thereafter the parties made a contract for five years for hydrant rental at the maximum rate named in the franchise. When this term expired on July 1, 1919, negotiations for a new contract failed, but the village continued to use water through the hydrants. It is practically admitted that the cost of furnishing water had greatly increased since 1913, and that the plaintiff cannot continue to furnish water at the maximum rates with profit. Yet the

municipality insists that the company must continue to furnish water at such rates.

A franchise is a special privilege conferred by government on individuals or corporations, which does not belong to the citizens of a country generally by common right. (*Matter of Rhinehart v. Redfield*, 93 App. Div. 410, 414; affd., 179 N. Y. 569.)

This " franchise " in so far as it defined the duties of parties having reciprocal obligations and agreed upon regulations for fire protection and for use and repair of the streets in which they had some common rights, is binding on the parties, being mutually beneficial. As to the rate, it constituted no contract for there was no consideration. It conferred no rights the company did not already possess. In respect to the use of its streets, the village had in this instance no special privilege to confer. The right to maintain and operate the water system in the streets came not by any permission or act of grace from the village, but direct from the Legislature. (Laws of 1873, chap. 737, § 4; Transp. Corp. Law, § 82; *Rochester & L. O. W. Co. v. City of Rochester*, 176 N. Y. 36.) Originally the trustees of the village might have refused permission to organize a company if they did not wish such a water supply to be introduced for the benefit of the municipality and its citizens. When they had granted such permission, their power was limited to requiring the streets to be kept in reasonable repair for public travel. This police power must be exercised for the protection of citizens, not for forcing a contract from a public service corporation for the benefit of the municipality. (*Wright v. Glen Telephone Co.*, 112 App. Div. 745.)

Confusion sometimes occurs as to franchises because certain public service corporations are required to obtain the consent of municipal authorities to use the streets prior to undertaking their work, such as railroad corporations and street railroad corporations (State Const. art. 3, § 18; Railroad Law, §§ 21, 171); pipe line corporations (Transp. Corp. Law, §§ 45, 46); and gas and electric light corporations (Id. § 61); but no such consent is required in the case of water works corporations. (Id. § 82.) Where the consent of the municipal authorities is necessary, they may attach thereto reasonable regulations and conditions which may constitute a franchise. Such power is derived entirely through legislative grant. A municipal corporation possesses no inherent authority to create rights in others which affect the public. (*Matter of Rhinehart v. Redfield, supra.*) It has no private estate or interest in the public streets, for their absolute control and the direction as to their use is in the Legislature. (*Adamson v. Nassau Electric R. R. Co.*, 89 Hun, 261.)

46

There was no delegation of such authority in the defendant's charter (Laws of 1882, chap. 359) or in the Village Law.

Nor does the much-urged fact that the franchise was " exclusive " give it validity. The municipality could not legally grant an " exclusive franchise." (*Syracuse Water Co.* v. *City of Syracuse,* 116 N. Y. 167, 181; *Skaneateles Water Works Co.* v. *Village of Skaneateles,* 161 id. 154.)

The reservation of its existing rights made in the franchise by the plaintiff seems of no importance under the circumstances. Had there been no legislation as to rates, it might have been helpful to the company. Otherwise, if it had accepted the franchise containing apparent benefits and operated under it, no matter if the municipality had no power to grant permission to use the streets, the company would not now be heard to question it (*Farnsworth* v. *Boro Oil & Gas Co.,* 216 N. Y. 40; *Village of Bolivar* v. *Bolivar Water Co.,* 62 App. Div. 484; *Pond* v. *New Rochelle Water Co.,* 183 N. Y. 330); and if it had become charged with an obligation possible to be performed, the company might be held bound to abide by it, even if unforeseen difficulties arose which made it a hard bargain. (*Columbus Railway & Power Co.* v. *Columbus,* 249 U. S. 399.)

Rate making is a legislative function. (*Knoxville* v. *Water Co.,* 212 U. S. 1.) The village may contract for water supply for a term not exceeding five years (Village Law, § 220); beyond that it has no power, express or implied, to establish rates.

The statute in effect when the plaintiff was incorporated (Laws of 1885, chap. 422) authorized water corporations to supply the authorities or inhabitants of a village " at reasonable rates and cost to all consumers who may use the same," and empowered the board of trustees to make contracts for a term of one year or more with such corporations. It changed the law theretofore in force, which permitted such rates and cost " as they shall agree upon." The statutory provision requiring reasonable rates entered by implication into any contractual relation between the parties, and formed part of its obligation. (*Town of North Hempstead* v. *Public Service Corporation,* 231 N. Y. 447.) If the village had contracted for water supply for the five-year period, the court would be likely to assume that the parties had anticipated that changes in costs might occur, and had agreed upon a rate they regarded reasonable with that fact in view. But if we were to consider this thirty-year " franchise " a contract with a fixed maximum rate, it would not be one beyond the inherent police power in the Legislature to modify for the public welfare (*People ex rel. Village of South Glens Falls* v. *Pub. Serv. Comm.,* 225 N. Y.

216, 221); and the statute governing rates being in existence when the agreement was made, the obligations will be determined by the law then in force. (*People ex rel. City of New York* v. *Nixon,* 229 N. Y. 356, 360.)

If the village does not need the water supply or cannot afford to pay a reasonable rate for it, the remedy is simple — there is no obligation to use it. If it does need a water supply for the protection of the health and property of its inhabitants, it should be willing to pay such rate. The company furnishing that supply can exist only if permitted to charge rates commensurate with the cost of production. Its continued existence is as important and as beneficial to the municipality as to the company. As CRANE, J., says in the *South Glens Falls Case* (*supra*), " It is a bad political economist who thinks the public is always served best by that which is cheap."

The Legislature has not undertaken by an act, such as the Public Service Commission Law, to regulate rates for water supply. It has simply said water companies may collect reasonable rates. These must be fair to both corporation and user that there may be neither confiscation nor extortion; and when the parties cannot agree and there is no other tribunal provided, the court will ascertain and determine what is a reasonable rate. (*City of Mount Vernon* v. *New York Inter Urban Water Co.*, 115 App. Div. 658, 661; *Brooklyn Union Gas Co.* v. *City of New York*, Id. 69; affd., 188 N. Y. 334.)

The trial court has held that the franchise is a valid and subsisting contract under which the company was obliged to furnish water to the municipality under the rates there fixed, unless the municipality voluntarily makes a new agreement at a greater rate. We do not reach the same conclusion, but hold that the franchise rate is not binding and that the plaintiff is entitled to recover for the hydrant rentals at a reasonable rate. (*Port Jervis Water Co.* v. *Village of Port Jervis*, 151 N. Y. 111; *Staten Island Water Supply Co.* v. *City of New York*, 144 App. Div. 318.)

The judgment should be reversed and a new trial granted, with costs to the appellant to abide the event of the action. Findings of fact numbered 3, 4, 10, 11 and 12 and the conclusions of law numbered 1, 2, 3 and 4 are disapproved and reversed.

All concur.

Judgment reversed upon the law and new trial granted, with costs to appellant to abide event. The findings of fact that exclusive franchises to use the streets of the village for maintaining and operating a water system were granted by defendant village to the

plaintiff corporation, and that the plaintiff operated its plant by virtue of such franchises and the obligation of the company was fixed thereby, as contained in the 3d, 4th, 10th, 11th and 12th findings, are disapproved and reversed, on the ground that there is no evidence to sustain them. Conclusions of law Nos. 1, 2, 3 and 4 are disapproved and reversed.