BENJAMIN GRIMSHAW, Suing on Behalf of Himself and of All Other Consumers of Water and Users of Sewer Service in the Village of Garden City, Similarly Situated, Plaintiff, *v.* THE GARDEN CITY COMPANY, Defendant.

Supreme Court, Nassau County, February, 1923.

**Injunction — company incorporated under Business Corporations Law engaging in sale of water — when injunction will not issue to restrain increase of rates — rate regulations under Transportation Corporations Law do not apply.**

It is the well-settled law of this state that court actions with reference to rates are dependent upon legislative initiative.

Since under the Business Corporations Law, by which no regulation of rates is provided, a business corporation may engage in the sale of water, the rate regula-

tions of the Transportation Corporations Law do not reach such corporation even though it be acting *ultra vires.*

In an action against such a corporation to determine reasonable rates for water supply and sewer service a motion for an injunction *pendente lite* to restrain an increase of rates will be denied.

APPLICATION for an injunction *pendente lite.*

*Raymond Ballantine,* for plaintiff.

*Evarts, Choate, Sherman & Leon (Frederick R. Coudert, Howard Thayer Kingsbury* and *James Garretson,* of counsel), for defendant.

LAZANSKY, J. Motion to restrain *pendente lite* increase of water rates and charges for sewer service in an action brought to determine reasonable rates for water supply and sewer service.

Although the term that a business " affects public interest " as it is used by the courts where the question of rate regulation is under consideration (*Munn* v. *Illinois,* 94 U. S. 113; *People* v. *Budd,* 117 N. Y. 1), is an elastic term and may be stretched to the breaking point, so that almost any private enterprise might be restricted by governmental supervision, it will be assumed that the defendant's present business of supplying water for the three thousand inhabitants of the village of Garden City, " affects public interest." That the properties used for the water mains may have been those of the defendant or its predecessors, when the mains were laid and public authority may not have been called upon for permission to use public property, are not controlling. The use of public property is not an exclusive test. However, it does not necessarily follow because the services for which the defendant charges are rendered in a public employment, that they are the subject of court action. The only regulation of water rates to which attention has been called is found in the Transportation Corporations Law. That provides that " seven or more persons may become a corporation for the purpose of supplying water to any of the cities, towns or villages and the inhabitants thereof " and requires " a permit signed and acknowledged by a majority of the board of trustees of the village " to be filed with the certificate of incorporation. The corporation is required to " supply the authorities or any of the inhabitants of any city, town or village through which the conduits or mains of such corporation may pass, * * * *with pure and wholesome water at reasonable rates and costs.*" The defendant is a corporation organized under the Business Corporations Law. If a business corporation has no power to sell water, and the only corporation that may sell water is one formed under the Transportation Corporations Law, which provides for rate regulation, then defendant surely cannot escape the

responsibilities of rate regulation, because under the Business Corporations Law, under which it is formed, there is no provision for rate regulation. It is urged that a corporation formed to sell water may only be organized under the Transportation Corporations Law. Aside from a doubt that I have that a corporation formed for the development of a large tract of its own land would have to be formed under the Transportation Corporations Law if it sought to lay pipes and supply water to people who buy or rent its property, which is the case in a large part of the development under consideration here, it seems to me that a corporation may be formed under the Business Corporations Law for the purpose of supplying water. Section 2 of the Business Corporations Law provides that " three or more persons may become a stock corporation for any lawful business or purposes, other than a moneyed corporation, or a corporation provided for by the banking, the insurance, the railroad and transportation corporations laws * * *." On its face this would prevent a corporation from being formed under the Business Corporations Law for the purpose of the distribution of water, since that privilege is provided for under the Transportation Corporations Law. But in conjunction with section 2 must be read section 15 of the Business Corporations Law which provides: " Water Companies.— No corporation shall be formed under th's chapter for the purpose of accumulating, storing, conducting, furnishing or supplying water for domest c, manufacturing or municipal purposes in the city of New York. Any corporation formed for the purpose of supplying any other city of the state with water, if unable to agree with the owners of any real property required for the purpose of the corporation for the purchase thereof may acquire title thereto by condemnation." It thus clearly appears that the legislature intended to provide for the formation of corporations under the Business Corporations Law for the supplying of water. Because of this provision the Transportation Corporations Law is not exclusive. Section 15 is a limitation or modification of section 2 of the Business Corporations Law, with the same effect as if to section 2 were added the words: " Except as provided in section 15 hereof." I think the fair import of section 15 is that corporations may be formed under the Business Corporations Law for the purpose of supplying water for domestic, manufacturing and municipal purposes, except in the city of New York, with the right, where such a corporation is formed in any other city, to acquire property by condemnation. See Laws of 1873, chap. 737; Laws of 1880, chap. 85; Laws of 1890, chap. 566; Laws of 1890, chap. 567; Laws of 1892, chap. 617; Laws of 1892, chap. 691; Laws of 1909, chap. 219; Laws

of 1909, chap. 240. No regulation of rates is provided for by the Business Corporations Law. The courts do not act until the legislature has made some provision with reference to rates. *Waterloo Water Co.* v. *Village of Waterloo*, 200 App. Div. 718; *Vil. of Saratoga Springs* v. *Saratoga G., etc., Co.*, 191 N. Y. 123; *Knoxville* v. *Water Co.*, 212 U. S. 1. The meaning of the *obiter dictum* in the prevailing opinion in *Munn* v. *Illinois, supra,* as to a common-law rule with reference to rate regulation is not clear. It seems to be well settled in this state that court action is dependent on legislative initiative. It may seem absurd that a corporation formed under the Transportation Corporations Law may be regulated as to its rates, while an individual or a business corporation lawfully doing the same thing may charge any price. But that is a matter for the legislature and not for the courts. Since under the Business Corporations Law a business corporation may engage in the sale of water, the rate regulations of the Transportation Corporations Law do not reach defendant even though it be acting *ultra vires*. The legislature has made no provision for the regulation of sewer service and, therefore, the courts will not interfere. The motion is denied.

Ordered accordingly.